STATE OF NEBRASKA, EX REL. BOARD OF TRANSPORTA-
TION, V. THE FREMONT, ELKHORN & MISSOURI
VALLEY R. R. COMPANY.

1. **State:** DUTIES OF ATTORNEY GENERAL. The attorney general is the law officer of the state, and is required to prosecute or defend any case in the supreme court in which the state is a party or interested; therefore, where a majority of the board of transportation of the state adopted a resolution asking the supreme court to continue a case pending therein against a railroad company to compel such company to conform its rates and charges to an order previously made by said board; *Held*, That the board had no authority to control the action of the attorney general in the management of the case.

2. **Mandamus:** DEMURRER TO ALTERNATIVE WRIT. Where a railway company demurred to an alternative writ requiring it to reduce its rates and charges to conform to an order of the board of transportation, and denied the power of the board to reduce such rates and charges, *Held*, That the court would determine the question of the power of the board to make the order in question before entering upon an examination of the facts, and therefore would not permit the demurrer to be withdrawn.

3.  **Railroads: POWER OF STATE BOARD.** The act to regulate railroads and to prevent unjust discrimination, approved March 31, 1887, provides that all charges made for services rendered, or to be rendered, by any railway company in this state, in the transportation of passengers or property, shall be reasonable and just, and every unjust and unreasonable charge for such service is prohibited and declared to be unlawful; and requires such railway company to print and keep for public inspection schedules showing the rates and fares and charges which have been established and are in force at the time upon such railroad. *Held,* That the board of transportation has authority to determine, in the first instance, what are just and reasonable charges for the services rendered or to be rendered on such railways.

4.  ——: ——. The act in question prohibits any preference or advantage to any particular person, company, corporation, or locality on any particular description of traffic in any respect, or to subject any particular person, company, firm, corporation, or locality, or any particular description of traffic to any prejudice or disadvantage in any respect, and places the general supervision of all railroads within the state in the board of transportation, and requires it carefully to investigate any complaints made in writing, and under oath, concerning any unjust discrimination against any person, firm, corporation, or locality, either in rates or facilities furnished, in order to prevent unjust discriminations against either persons or places.

5.  ——: ——. The word "locality," mentioned in the statute, means the territory unjustly discriminated against, and may be a village, city, county, or portion of the state.

6.  ——: ——. The power to determine what is an unjust rate and charge and the extent of the same, and to prevent unjust discrimination, carries with it the power to decide what is a just rate and charge, and authorizes the board to fix just and reasonable rates and charges.

7.  ——: ——. The finding of fact by the board of transportation, in any matter submitted to it under the above statute for determination, is *prima facie* evidence of the existence of such facts and of the reasonableness of an order made by said board in pursuance thereof.

8.  ——: ——. The act to regulate railroads, and prevent unjust discrimination, approved March 31, 1887, being a remedial statute, is to receive a liberal construction to carry into effect the purposes for which it was enacted.

9. ——: ——: JURISDICTION OF SUPREME COURT. Where the board of transportation has investigated charges of unjust discrimination against a railroad company, and has found such unjust discrimination to exist, and ordered such railroad company to reduce its rates to conform to a schedule presented by such board, which order the railroad company neglected to comply with, mandamus is a proper remedy to enforce such order, and the mention of the district court in the statute will not preclude bringing the action in the supreme court in any case where the latter court has original jurisdiction.

ORIGINAL application for mandamus. The case is stated in the opinion.

*O. P. Mason,* for relator.

The fact that the relators, by the terms of the statute, might make the application to the district court of the county or district where the road was operated, does not take away or interfere with the jurisdiction of this court, and the statute could not take away the jurisdiction of this court. The object of a mandamus is not to supersede legal remedies, but rather to supply a lack of them. Two prerequisites must exist to warrant a court in granting this remedy. *First,* It must appear that the relator has a clear legal right to the performance of the particular act or duty at the hands of the respondent; and *Second,* That the law affords no other adequate or specific remedy to secure the enforcement of the right and the performance of the duty it is sought to coerce. *People v. Supervisors of Greene,* 12 Barbour, 217. *Commonwealth v. Rosseter,* 2 Binn., 360. *Tarver v. Commissioner's Court,* 17 Ala., 527. *King v. Water Works Co.,* 6 Ad. and E., 355, per Coleridge, J.

The test to be applied in determining upon the right to relief by mandamus is to inquire whether the party aggrieved has a clear legal right, and whether he has any other adequate legal remedy, since the writ only belongs to those who have legal rights to enforce, and who find

themselves without an appropriate legal remedy. *People v. Thompson*, 25 Barb., 73. And in this sense it may be regarded as a dernier resort, to be used when the law affords no other adequate means of relief. *People v. Head*, 25 Ill., 325. And whenever the conditions above noticed co-exist, the right to the aid of a mandamus may be regarded as to that extent *ex debito justitiæ. People v. Hilliard*, 29 Ill., 418. It follows as a debt of justice, as a legal right. 3 Blackstone Com., 48. In this case the relators show not only a clear legal right to have the particular thing in question done, but also the right to have it done by the persons against whom the writ is sought. *People v. Mayor of Chicago*, 51 Ill., 28.

*William Leese, Attorney General,* for relator, cited the following authorities: *Railroad Commission v. Natchez, Jackson & Col. R. R.* 62 Miss., 646. *Id. v. Yazoo & Miss. Valley R. R.*, Id., 607. *Id. v. Farmers' Loan & Trust Co.*, 116 U. S., 307. *Id. v. Illinois Central R. R. Co.*, Id., 347. *Id. v. New Orleans & N. E. R. R.*, Id., 352. *Munn v. Illinois*, 94 U. S., 113. *Peik v. Chicago & N. W. R. R.*, Id., 164. *C., B. & Q. R. R. Co. v. Iowa*, Id., 155. *Chicago, Mil. & St. Paul v. Ackley*, Id., 179. *Winona & St. Peter R. R. Co. v. Blake*, Id., 180. Constitution of Nebraska, Sections 4 and 7, Art. II. *State, ex rel. Mattoon, v. R. V. R. R. Co.*, 18 Neb., 512.

*G. M. Lambertson* appeared on behalf of Board of Trade and Freight Bureau of city of Lincoln, made argument, but filed no brief.

*John B. Hawley* (*T. M. Marquett* also appearing), for respondent on power of board, cited: *Thatcher v. Fitchburg R. R. Co.*, 1 Interstate Com. Rep., 357. *In re Railway Conductors*, Id., 20. *Chicago, etc., R. R. Co. v. Iowa,* 94 U. S., 161. On remedy: *State v. School District*, 8

Neb., 94. *State v. Omaha*, 14 Id., 267. *State v. Eber-hardt*, Id., 203. High Ex. Leg. Rem., Sec. 5.

MAXWELL, CH. J.

On the 24th day of September, 1887, the board of transportation of this state served notice upon the respondent, requiring it to reduce its freight charges 33⅓ per cent on all its lines within the state of Nebraska, on or before October 1st, 1887, a schedule of the charges to be made as reduced for freight on said lines of road within the state being furnished to the respondent. The respondent neglected to comply with the order of the board, and on the 4th day of October, 1887, the board, through the attorney general of the state, applied for an alternative writ of mandamus to compel the respondent to comply with said order. The writ was returnable on the 5th of that month, when the respondent, by its attorney, appeared and prayed for additional time in which to plead to the writ, which time was granted. The respondent demurred to the complaint, and also to the alternative writ, and the case was set for hearing on the 17th day of October, 1887. On that date the attorney for the respondent not appearing, and the attorney general being absent at Washington on business pertaining to his office, the case was passed until his return. On his return, the case was set for hearing on the 31st day of October, 1887. At that date the attorney for the respondent appeared and filed a statement of an alleged compromise with the board of transportation of the state, except the attorney general, and also a resolution of said board, except said attorney general, asking the court to continue the case until the January term. This the attorney general resists, and insists that the case shall proceed, in order that the authority of the board over the subject-matter may be determined. The first question presented, therefore, is the authority of the

attorney general to proceed with the prosecution of the case against the protest of a majority of the board of transportation.

Section 1a of article V., chapter 83 of the Compiled Statutes, 1887, provides that, "The attorney general shall appear for the state, and prosecute and defend all actions and proceedings, civil or criminal, in the supreme court, in which the state shall be interested, or a party, and shall also, when requested by the governor, or either branch of the legislature, appear for the state, and prosecute and defend in any court, or before any officer, any cause or matter, civil or criminal, in which the state may be a party or interested." The attorney general is thus the law officer of the state, and intrusted by law with the management and control of all cases in which the state is a party or interested. The majority of the state board of transportation, therefore, cannot control his action in the premises, and the motion to continue the cause must be overruled.

2d. Upon the overruling of the motion for continuance, the attorney for the respondent asked leave to withdraw the demurrer, and for time in which to prepare and file an answer. This, however, cannot be permitted. The respondent denies the authority of the state board to regulate and control the rates of freight upon its lines of railway. The question of power is fully raised by the demurrer, and should be decided before entering upon the consideration of questions of fact. It is important, too, that if such power should be found to exist, that the question be determined, so that parties aggrieved may apply to the board for relief. The motion for leave to withdraw the demurrer and file an answer is therefore overruled. If, however, the court shall decide that the board of transportation has the power to regulate rates as contended for in the petition and alternative writ, the demurrer will be overruled, and upon proper application the defendant will have leave to answer.

3d. It is a matter of the public history of the state that for a number of years prior to the 31st day of March, 1887, it was generally claimed that some or all the railroads of the state had granted secret rebates to favorite shippers over their lines; that the effect of such rebates was to charge a party not thus favored a larger sum for the same service than was charged to the favorite shippers; that equal facilities, in many cases, were not furnished to all who desired to ship either goods, grain, or stock, and business, as far as possible, was thrown into the hands of favorite parties. It was also claimed that certain prominent competing points in the state which had paid large sums as donations to secure competing lines, had actually been discriminated against by the increase in rates, and that charges generally throughout the state were much higher than those of other states having the same amount of business. Other wrongs were claimed which need not be noticed here. To correct these wrongs, the legislature at its last session passed "An act to regulate railroads, prevent unjust discrimination, provide for a board of transportation, and define its duties, and repeal articles 5 and 8 of chapter 72, entitled 'Railroads,' of the Revised Statutes, and all acts and parts of acts in conflict therewith"—Compiled Statutes of 1887, pp. 563-570. The first section of the act provides that it shall apply to any common carrier or carriers engaged in the transportation of passengers or property by railroad under a common control, management, or arrangement for continuous carriage or shipment from any point in the state of Nebraska to any other point in said state, and requires that all charges made for any service rendered or to be rendered in the transportation of passengers or property shall be reasonable and just, and prohibits unjust and unreasonable charges, and declares them to be unlawful. The second section declares that no common carrier subject to the provisions of the act shall, directly or indirectly, by any special rate, rebate, drawback,

or other device, charge, demand, collect, or receive from
any person or persons a greater compensation for any serv-
ice rendered or to be rendered in the ·transportation of
passengers or property than it charges, demands, collects,
or receives from any other person or persons for doing for
him or them a like and contemporaneous service in the
transportation of a like kind of· traffic under substantially
similar circumstances and conditions. The third section
declares it to be unlawful for any such common carrier to·
give any preference or advantage to any particular person,
company, firm, corporation, or locality, or [on] any par-
ticular description of traffic, in any respect whatever, or to·
subject any particular person, company, firm, corporation,
or locality, or any particular description of traffic to any
prejudice or disadvantage in any respect whatsoever, and
also declares that a railway connecting with other lines
shall not discriminate in its rates and charges between
such connecting lines. The fifth section prohibits the pool-
ing of earnings of railways. The sixth section requires
such railways to print and keep for public inspection,
schedules showing the *rates and fares and charges* "for the
transportation of passengers and property which any com-
mon carrier *has established*, and which are in force at the
time upon its railroad, as defined by the first section of
this act. The schedules printed as aforesaid by any such
common carrier shall plainly state the places upon its rail-
road between which property and passengers will be carried,
and shall contain the classification of freight in force upon
such railroad, and shall also state separately the terminal
charges and any rules or regulations which in anywise
change, affect, or determine any part of the aggregate of
such aforesaid rates and fares and charges. Such schedules
shall be printed in large type, of at least the size of ordi-
nary pica, and copies for the use of the public shall be kept
in every depot or station upon any such railroad, [in] such
places and in such form that they may be conveniently in-

spected. No advance shall be made in the rates, fares, and charges *which have been* established and published as aforesaid by any common carrier, in compliance with the requirements of this section, except after ten days' public notice, which shall plainly state the changes proposed to be made in the schedule then in force, and the time made in the schedule then in force, and the time when the increased rates, fares, or charges will go into effect; and the proposed changes shall be shown by printing new schedules, or shall be plainly indicated upon the schedules then in force at the time and kept for public inspection. Reductions in such published rates, fares, or charges may be made without previous public notice; but whenever any such reduction is made notice of the same shall be publicly posted, and the changes made shall immediately be made public by printing new schedules, or shall immediately be plainly indicated upon the schedule at the time in force and kept for public inspection. And when any such common carrier shall have established and published its rates, fares, and charges in compliance with the provisions of this section, it shall be unlawful for such common carrier to charge, demand, collect, or receive from any person or persons a greater compensation for the transportation of passengers or property, or for any services in connection therewith, than is specified in such published schedule of rates, fares, and charges as may at the time be in force."

It is contended by the attorneys for the respondent that without a charge actually made in reference to some specific freight and against some particular person, the statute is not and cannot be violated, and it is said, p. 6 of the respondent's brief, " A charge cannot be made when there is no property transported, and when there is no person for whom such property has been or is to be transported. There must be both a specific person and specific property, and the charge must be made for such specific property and against such specific person; and it must be for such serv-

ice rendered or to be rendered." The respondent's attor-
neys seem to ignore the remedy given by the statute, and
place the claim for relief entirely upon the ground that
there must be a charge actually made for services rendered
before the question of the unlawful charges can be deter-
mined. The statute, however, requires the railway com-
pany to establish and publish its rates, fares, and charges
before rendering the service. Suppose A, residing at
Columbus, or other point in the interior of the state, wishes
to ship goods to Omaha or Lincoln, but deems the charges
excessive, the statute gives him the right to complain of such
charges as being excessive, and ask that they shall be fixed
at such sum as shall be reasonable and just, as provided in
the first and sixth sections of the act. The first section de-
clares that every unjust and unreasonable charge is prohib-
ited and declared to be unlawful. The board of transpor-
tation, therefore, is clothed with power to determine what
is a just and reasonable charge on all the lines of railway
within the state, and this may be done in advance of the
rendition of the service.

The seventh section requires such railway company to
file with the board copies of its schedules of its rates,
fares, and charges, which have been established and pub-
lished in compliance with the statute, and promptly to
notify said board of all changes made in the same, and,
also, to file with said board copies of all contracts, agree-
ments, or arrangements with other common carriers in
relation to any traffic affected by the provisions of this act
to which it may be a party, and in cases where passengers
and freight pass over continuous lines or routes operated
by more than one common carrier, and the several com-
mon carriers operating such lines or routes establish joint
tariffs of rates, or fares, or charges, for such continuous
lines or routes, copies of such joint tariffs shall also in like
manner be filed with said board, such continuous lines
shall publish the joint rates, fares, and charges thereon,

when so directed by the board, and may be compelled to publish the same, if on such request they neglect or refuse to do so. The eighth section makes it unlawful for such common carrier to enter into any combination, contract, or agreement, express or implied, to prevent by change of time schedule, carriage in different cars, or by other means or devices, the carriage of freight being continuous from the place of shipment to the place of destination. The ninth section authorizes a recovery against any such carrier as shall do, cause to be done, or permit to be done, any act, matter, or thing, in this act prohibited, or declared to be unlawful, or shall omit to do any act, matter, or thing in this act required to be done. The tenth section provides the procedure by any person claiming to be damaged. The twelfth section authorizes the board to inquire into the management of the business of all common carriers subject to the provisions of the act, and shall keep itself informed as to the manner and method in which the same is conducted, and shall have the right to obtain from such common carriers full and complete information necessary to enable the board to perform the duties and carry out the object for which it was created, and it is clothed with power to require the attendance and testimony of witnesses and the production of all books, papers, tariffs, contracts, agreements, and documents, relating to any matter under investigation, and it may invoke the aid of either the district or supreme court to require the production of the required witnesses or documents. The thirteenth section provides that any person, firm, corporation, or association, or any mercantile, agricultural, or manufacturing society, or any politic or municipal organization, complaining of anything done, or omitted to be done, by any common carrier subject to the provisions of the act, in contravention of the provisions thereof, may apply to said board by petition, which shall briefly state the facts; whereupon a statement of the charges thus made shall be forwarded

by the board to such common carrier, who shall be called upon to satisfy the complaint, or to answer the same in writing within a reasonable time, to be specified by the board.   If such common carrier, within the time specified, shall make reparation for the injury alleged to have been done, said carrier shall be relieved of liability to the complainant only for the particular violation of law thus complained of.   If such carrier shall not satisfy the complaint within the time specified, or there shall appear to be any reasonable ground for investigating said complaint, it shall be the duty of the board to investigate the matters complained of in such manner and by such means as it shall deem proper.   No complaint shall at any time be dismissed because of absence of direct damage to the complainant.   That is, railroads being public ways, and subject to legislative control, any violation of the statute by them is a matter of public right and to procure the enforcement of a public duty it is sufficient for the complainant to show that he is a citizen, and as such, is interested in the execution of the laws.   *State v. Shropshire,* 4 Neb., 413–14.   *Hall v. The People, ex rel.,* 57 Ill., 313. *State, ex rel., v. Judge,* 7 Iowa, 202.   *Hamilton v. State,* 3 Ind., 458.   *The People v. Halsey,* 37 N. Y., 348.   *The State v. Stearns,* 11 Neb., 106.

The fourteenth section requires the board to make a report in writing in respect to any investigation which they have made, which shall include the *findings of fact* together with a recommendation as to what reparation, if any, can be made by the common carrier to the party injured, and such findings shall be deemed *prima facie* evidence of every such fact found.   The fifteenth section declares that if it be made to appear to the satisfaction of the board, either by the testimony of witnesses, or other evidence, that anything has been done, or permitted to be done, in violation of the provisions of this act, or any law cognizable by said board by any common carrier, or that

injury or damage has been sustained by the party or parties,
complaining, or other parties aggrieved, in consequence of
any such violation, it shall be the duty of the board to forth-
with cause a copy of its report in respect thereto to be
delivered to such common carrier, together with a notice
to such common carrier to cease and desist from such vio-
lation, or to make reparation for the injury so found to
have been done, or both, within a reasonable time, to be
specified by the board.   The sixteenth section declares that
if such railway companies "shall violate, or refuse, or
neglect to obey, any lawful order or requirement of the
board in this act named, it shall be the duty of the board,
and lawful for any company or person interested in such
order or requirement, to apply in a summary way, by
petition filed in the judicial district in which the common
carrier complained of has its principal office, or in the
district in which the violation or disobedience of such order
or requirements shall happen, alleging such violation or
disobedience, as the case may be, and the said court shall
have power to hear and determine the matter on such short
notice to the common carrier complained of, as the court
shall deem reasonable, and said court shall proceed to hear
and determine the matter speedily as a court of equity, but
in such manner as to do justice in the premises ; and to
this end the court shall have, if it think fit, [power] to
direct and prosecute in such mode and by such persons as
it may appoint; and such inquiries as the court may think
needful to enable it to form a just judgment in the matter
of such petition; and on such hearing the report of said
board shall be *prima facie* evidence of the matters therein
stated ; and if it be made to appear to such court on such
hearing, or on report of any such person or persons, that
the lawful order or requirement of said board drawn in
question has been violated or disobeyed, it shall be lawful
for such court to issue a writ of injunction, or other proper
process, mandatory or otherwise, to restrain such common

carrier from further continuing such violation or disobedience of such order or requirement of said board, and enjoining obedience to the same; and in case of any disobedience of any such writ of injunction or other proper process, mandatory or otherwise, it shall be lawful for such court to issue writs of attachment, or any other process of said court incident or applicable to writs of injunction or other proper process, mandatory or otherwise, against such common carrier, and, if a corporation, against one or more of the directors, officers, or agents of the same, or against any owner, lessee, trustee, receiver, or any other person failing to obey such writ of injunction, or other proper process, mandatory or otherwise; and said court may, if it shall think fit, make an order, directing such common carrier, or other person so disobeying such writ of injunction, or other proper process, mandatory or otherwise, to pay such sum of money, not exceeding for each carrier or person in default the sum of five hundred dollars for every day, after a day to be named in the order, that such carrier, or other person, shall fail to obey such injunction, or other proper process, mandatory or otherwise."

The mention of the district court in the above section does not exclude the supreme court from hearing any case in which it has original jurisdiction.

Section seventeen provides that "said board shall have the general supervision of all railroads operated by steam in the state, and shall inquire into any neglect of duty or violation of any of the laws of this state by railroad corporations doing business in this state, or by any officer, agent, or employe of any railroad corporation doing business in this state; and shall, from time to time, carefully examine and inspect the condition of each railroad in this state, and its equipments and manner of the conduct and management of the same, with reference to the public safety, interest, and convenience. It shall carefully investigate any com-

plaint made in writing and under oath, concerning' any lack of facilities, or accommodations, furnished by any railroad corporation doing business in this state, for the comfort, convenience, and accommodation of individuals and the public; or any unjust discrimination against either any person, firm, or corporation, or locality, either in rates, facilities furnished, or otherwise; and whenever, in the judgment of said board, any repairs are necessary upon any portion of the road, or upon any stations, depots, station-houses, or warehouses, or upon any of the rolling stock of any railroad doing business in this state, or additions to, or any changes in its rolling stock, stations, depots, station-houses, or warehouses are necessary, in order to secure the safety, comfort, accommodation, and convenience of the public and individuals, or any change in the mode of conducting its business, or operating its road, is reasonable and expedient, in order to promote the security and accommodation of the public, or in order to prevent unjust discriminations against either persons or places, it shall make a finding of the facts, and an order requiring said railroad corporation to make such repairs, improvements, or addition to its rolling stock, road, stations, depots, or warehouses, or to make such changes, either in the manner of conducting its business, or in the manner of operating its road, as such board shall deem proper, reasonable, and expedient."

It will thus be seen that the board is clothed with the "general supervision of all railroads operated by steam in the state." * * * * * And it is made its duty to " carefully investigate any complaint in writing and under oath, concerning * * * * * any unjust discrimination against either any person, firm, or corporation, or locality, either in *rates,* facilities furnished, or otherwise, * * * * * * * * * in order to *prevent* unjust *discriminations* against either *persons* or *places;* it shall make a finding of the facts and an order requiring said

railroad corporation    *    *    *    *    to make such changes
*    *    in the manner of conducting its business as such
board shall deem proper, reasonable, and expedient."

Webster defines the word " supervision" to be " The act
of overseeing; inspection, superintendence." The board,
therefore, is clothed with the power of overseeing, inspect-
ing, and superintending the railways within the state, for
the purposes of carrying into effect the provisions of this
act, and they are clothed with power to prevent unjust dis-
criminations against either persons or places.

The attorneys for the respondent contend that the act is
to receive a strict construction. No satisfactory reason, how-
ever, was given for the adoption of such rule.  The act is
remedial in its nature, and is designed to prevent and punish
abuses in the management of some or all of the railways of
the state, and in construing remedial statutes, there are three
points to be considered, viz., the old law, the mischief, and
the remedy ; that is, how the law stood at the making of
the act, what the mischief was for which the former law
did not provide, and what remedy the legislature has pro-
vided to cure this mischief, and it is the business of courts
so to construe the act as to suppress the mischief and
advance the remedy.    1 Bl. Com., 87.    *Rogers v. Omaha
Hotel Co.*, 4 Neb., 58.

Here is an act which declares that all charges *shall be
just and reasonable,* prohibits and declares unlawful all un-
just and unreasonable charges ; which requires schedules of
such just and reasonable charges to be posted for the use of
the public, and prohibits an advance in rates except upon
certain conditions; which prohibits any preference in favor
of or against any person or place ; which requires the board
to investigate all complaints against any railway corpora-
tion doing business within the state, and gives such board
power to call for persons and papers in order that their
investigations may be thorough and the report thereof
based upon facts, and also makes their finding of fact *prima*

*facie* evidence thereof, and requires said board to investigate and prevent any unjust. discrimination against either any person, firm, corporation, or locality. These are broad powers. They are not to be restricted. Such powers were conferred for the express and declared purpose of fixing charges which shall be reasonable and just, and prohibiting unjust and unreasonable charges and unjust discrimination. The court has no authority to limit the board in any respect, in that regard. Such board is to determine, in the first instance, at least, what are reasonable and just charges, what unreasonable and unjust, and when any person, firm, corporation, or locality is unjustly discriminated against. There can be no restriction of the word "locality;" it may refer to a village, city, county, or portion of the state, the meaning in each case to be determined by the territory which the board shall find to be unjustly discriminated against. If there is discrimination against any person, firm, or corporation, it is the duty of the board so to find, and to require the railway company to cease its discrimination. To do so such board has the authority to require such railway company to reduce its rates to a reasonable and just standard. The power to fix a reasonable and just rate is clearly conferred on the board, as also the power to determine what rates are unjust and unreasonable. It is the duty of the board to prevent unjust discrimination in all the forms mentioned in the statute, and to do so it may determine what is a proper charge to and from any points within the state, and its order in that regard based on its finding of facts will be *prima facie* evidence of the correctness of the order.

. In the case under consideration the board found that the rates and charges of the respondent were excessive; in other words, that there was unjust discrimination against that part of the state, and having so found, the board is clothed with ample power to require such railway company to reduce its rates and charges. The power of the board, there-

fore, to establish and regulate rates and charges upon rail-ways within the state of Nebraska is full, ample, and complete.

4th.    Some objection is made to the remedy by man-damus, and it is said by the attorneys for the respondent that the writ may not issue where there is a plain and ade-quate remedy in the ordinary course of the law [Code, Sec. 646]; and therefore " it may not issue in this case, because there is a plain and adequate remedy in the law for enforc-ing the order of the board of transportation, if its order is a lawful one, by application to the district court in the mode pointed out by the 16th section of the act of 1887. That the proceeding under the 16th section is both plain and adequate.

" That the legislature did not intend to authorize or permit the enforcing of all orders of the board by mandamus, is clear, from the fact that as to the particular matters men-tioned in the 17th section, it gave authority to proceed by mandamus as the only and exclusive remedy for enforcing such orders, and as to all other orders in reference to all other matters mentioned in the act, the legislature provided as the only and exclusive remedy an application in the first instance to the district court, as provided in section 16.

" The fact that the legislature specifically gave the right to proceed by mandamus, in the cases mentioned, in the 17th section only, and provided other specific and adequate remedy for all other cases, leaves no doubt that it was the intention of that body that mandamus should only be re-sorted to in the cases provided for in the 17th section."

These objections are untenable.    They are that the dis-trict court alone has jurisdiction, and not that the relator has another remedy besides mandamus.    But even if the objections were to the form of the remedy, they could not be sustained.    The fact that an action will lie does not supersede the remedy by mandamus.    If the remedy by an action is not plain and adequate, a mandamus may be issued, notwithstanding an action would lie.    *State v.*

*Stearns*, 11 Neb., 107. Thus while a party aggrieved by some violation of the statute by the respondents might maintain an action against such respondent, yet if such remedy was not adequate it would not prevent him from enforcing his rights by mandamus. The test to be applied in determining the right to relief by mandamus is to inquire whether the relator has a clear legal right to such writ, and whether he has any other *adequate* legal remedy. *People v. Head*, 25 Ill., 325. *People v. Hilliard*, 29 Ill., 418. In the case at bar the relators show a clear legal right to have the order made by them complied with. *People v. Mayor*, 51 Ill., 28. *People v. Brooklyn*, 1 Wend., 318. And this writ may be applied for in a proper case in the supreme court under any section of the act which authorizes the filing of an application in the district court for such writ. In many cases the district court is unable to grant adequate relief, its jurisdiction being limited to a particular county. Thus suppose the board of transportation, as in the case under consideration, should order a railway company to reduce its rates and charges on all its lines within the state, a question might, perhaps, arise as to the power of the district court to act on rates without the county in which the action was brought. So in cases of like character. But where the action is instituted in the supreme court no question of that kind can arise; nor can the party be debarred by any statute of a constitutional right. The supreme court, therefore, has jurisdiction in the case, and mandamus is the proper remedy. The demurrer, therefore, is overruled, and a peremptory writ will issue within ten days from this date, unless the respondent, within that time, shall present to the court an answer showing compliance with the alternative writ, or a defense to the action upon the facts.

JUDGMENT ACCORDINGLY.

THE other judges concur.