[No. 7110.   Decided February 13, 1908.]

GREAT NORTHERN RAILWAY COMPANY *et al., Appellants,* v. SNOHOMISH COUNTY *et al., Respondents.*[1]

TAXATION—LEVY AND ASSESSMENT—RAILROADS—MODE OF ASSESSMENT—EQUALITY—POWERS OF STATE TAX COMMISSION.  The "general supervision" over county assessors and boards of equalization, given to the state boards of tax commissioners by Laws 1905, p. 224, is not restricted to advisory acts, but empowers the commissioners to classify intercounty railroads for the purpose of taxation and to fix the rate of assessment therefor, in view of other constitutional and statutory provisions making intercounty railroads an entirety for the purpose of assessment and requiring that the entire value be apportioned between the several counties in proportion to mileage and that the assessment be equalized between the different counties so that equality of taxation shall be secured; and an assessment of intercounty railroads by the assessor of one county, at a different and higher rate per mile than that adopted in all other counties by order of the state board of tax commissioners, is manifestly unequal and void.

[1] Reported in 93 Pac. 924.

SAME—PRESUMPTIONS. Such an assessment cannot be sustained upon the presumption that all other property in such county was assessed proportionally higher than in other counties, in view of the requirement that property be assessed at its true value.

STATUTES — LEGISLATIVE CONSTRUCTION. A legislature has no power to construe the act of its predecessor, and no such construction is attempted where the act in question was reenacted without change, and other provisions adopt an entirely new system of procedure.

Appeal from a judgment of the superior court for Snohomish county, Black, J., entered July 27, 1907, upon sustaining a demurrer to the complaint, dismissing an action to enjoin the collection of taxes excessively assessed against railway property. Reversed.

*L. C. Gilman, B. O. Graham,* and *M. J. Gordon* (*R. C. Saunders,* of counsel), for appellants.

*G. D. Eveland* and *Cooley & Horan,* for respondents.

RUDKIN, J.—The complaint in this action alleges substantially the following facts: That the plaintiff the St. Paul, Minneapolis & Manitoba Railway Company is a corporation, organized and existing under the laws of the state of Minnesota, and is duly authorized to do business in the state of Washington; that said plaintiff is the owner of a line of railway extending from St. Paul, in the state of Minnesota, to the city of Everett in Snohomish county, in the state of Washington; that of said line of railway there lies within said Snohomish county 43.92 miles of main track and 14.17 of side track; that the plaintiff Seattle & Montana Railway Company is a corporation organized and existing under the laws of the state of Washington; that said plaintiff is the owner of a line of railway extending from the city of Seattle to the city of Blaine, in the state of Washington; that of said line of railway there lies in Snohomish county 43.04 miles of main track and 15.48 miles of side track; that all of said lines of railway belonging to the plaintiffs the St. Paul, Minneapolis

& Manitoba Railway Company and the Seattle & Montana Railway Company are used, occupied and operated by the plaintiff Great Northern Railway Company, a corporation, organized and existing under the laws of the state of Minnesota, as a part of its general system of railway lines extending from the cities of St. Paul and Duluth, in the state of Minnesota, to the cities of Seattle and Blaine, in the state of Washington, under contracts and arrangements requiring said last named company to pay the taxes assessed against said properties; that in the exercise of the power conferred upon it by law, the state board of tax commissioners of the state of Washington, for the purposes of assessment and taxation for the year 1906, classified the different railroad properties owned and operated within the state, and by said classification the railroads above described were classified as follows: Main line tracks of the St. Paul, Minneapolis & Manitoba Railway Company as "First Class"; main line tracks of the Seattle & Montana Railway Company from its connection with the St. Paul, Minneapolis & Manitoba Railway Company near Everett Junction south to the county line of Snohomish county, as "First Class"; main line tracks of the same company from Everett Junction north to the county line, as "First Class B"; that said state board of tax commissioners fixed the assessment for said year, for the purposes of taxation on railroad tracks of the first class, at the sum of $14,520 per mile; on rolling stock of railroads of the first class at $3,168 per mile; on railroads of the first class B, at $10,560 per mile; and on the rolling stock thereon at $2,640 per mile; that said valuation above mentioned was so fixed by said state board of tax commissioners in relation to, and based upon, the comparative value of all other lines of railway throughout the state, and proper directions and instructions were by said board made and given to the various county assessors in counties through which plaintiffs' said lines of railway extended in the state of Washington, including the assessor of said Snohomish county, so as to pro-

cure and secure equality and uniformity of assessment and taxation in the various counties of the state through which said lines of railroad extend, and to secure equality and uniformity in the valuation for assessment of the various lines of railroad throughout the respective counties of the state; that in conformity with, and in obedience to, the directions and instructions of the state board of tax commissioners, the county assessors of all counties along the lines of said railroads, except the assessor of Snohomish county, assessed the property of the plaintiffs on the classification and rate per mile thus fixed by the state board of tax commissioners; that the assessor of Snohomish county wrongfully and unlawfully assessed the tracks designated as first class at $25,900 per mile, the rolling stock thereon at $3,960 per mile, the tracks designated as first class B at $19,000 per mile, the rolling stock thereon at $3,300 per mile; and, therefore, plaintiffs' said properties have been assessed for taxation for the year 1906 at a valuation disproportionate to all other railroad property in the state, and at a valuation relatively greater than the other railroad property in the state has been assessed for said year; that the board of equalization of Snohomish county wrongfully refused to reduce said assessment; that the taxes on said properties for the year 1906, on the valuation fixed by the assessor and board of equalization, are $26,108.32 in excess of the taxes based on the valuation of the state board of tax commissioners; that the plaintiffs have tendered, and stand willing to pay, all taxes and assessments against said property, less said excess of $26,108.32, and that the treasurer of Snohomish county refuses to accept the same.

The prayer of the complaint is for an injunction against the collection of such excess, and for general relief. A demurrer to this complaint was sustained, and the plaintiffs electing to stand on their pleading and refusing to plead further, a judgment of dismissal was entered, from which this appeal is prosecuted.

Section 2 of art. 7 of the constitution provides that:

"The legislature shall provide by law a uniform and equal rate of assessment and taxation on all property in the state, according to its value in money, and shall prescribe such regulations by general laws as shall secure a just valuation for taxation of all property, so that every person and corporation shall pay a tax in proportion to the value of his or her or its property."

Section 32 of the revenue act of 1897, Laws 1897, p. 150, provides that:

"The value of the 'railroad track' shall be listed and taxed in the several counties in the proportion that the length of the main line track in such county bears to the whole length of the road in the state, except the value of the side or second track, and all turnouts, and all station houses, depots, machine shops, or other buildings belonging to the road, which shall be taxed in the county in which the same are located."

Section 34 provides that:

"The rolling stock shall be listed in the several counties in the proportion that the length of the main track used or operated in such county bears to the whole length of the road used or operated by such person, company or corporation, whether owned or leased by him or them in whole or in part."

Section 42 provides that:

"All property shall be assessed at its true and fair value in money. In determining the true and fair value of real or personal property, the assessor shall not adopt a lower or different standard of value because the same is to serve as a basis of taxation; nor shall he adopt as a criterion of value the price for which the said property would sell at auction, or at a forced sale, or in the aggregate with all the property in the town or district; but he shall value each article or description of property by itself, and at such sum or price as he believes the same to be fairly worth in money at the time such assessment is made. The true cash value of property shall be that value at which the property would be taken in payment of a just debt from a solvent debtor."

The second subdivision of § 2 of the act creating the state board of tax commissioners, Laws 1905, p. 224, provides that:

"The commissioners shall have the power, and it shall be their duty: . . . Second. To exercise general supervision over assessors and county boards of equalization, and the determination and assessment of the taxable property in the several counties, cities and towns of the state, to the end that all taxable property in this state shall be placed upon the assessment rolls and equalized between persons, corporations and companies in the several counties of this state, and between the different municipalities and counties therein, so that equality of taxation shall be secured according to the provisions of existing laws."

While these several provisions bear more or less directly on the question under consideration, the case turns principally on the meaning of the term *general supervision* in the act defining the powers and duties of the state board of tax commissioners. From these provisions, constitutional and statutory, we think it is manifest: (1) That the main track and rolling stock of a railway extending through two or more counties in this state are an entirety for the purpose of assessment and taxation; (2) that the entire value of such main track and rolling stock must be apportioned between the several counties through which the road passes, in the proportion that the mileage in each of such counties bears to the entire mileage in the state; (3) that such main track and rolling stock must be assessed at their true and fair value in money; (4) that the assessment shall be equalized as between the different counties so that equality of taxation shall be secured according to the provisions of law; and (5) that the state board of tax commissioners is given general supervision over assessors and county boards of equalization to that end.

Inequality in the assessment of the property of the appellant companies, as between the different counties in the state, is apparent on the face of this record. Counsel for respondents suggest that the assessor and taxing officers of Snohom-

ish county may have placed a proportionately higher value on all other property in their county, and that the apparent inequality does not necessarily exist, but, in the face of the statute requiring all property in all counties to be assessed at its true and fair value in money, we cannot indulge in any such speculations or presumptions. The state board of tax commissioners is given general supervision over assessors and county boards of equalization, to the end that all taxable property shall be placed on the assessment rolls and equalized as between the different counties and municipalities so that equality of taxation shall be secured according to the provisions of law.

What is meant by *general supervision?* Counsel for respondents contend that it means, to confer with, to advise, and that the board acts in an advisory capacity only. We cannot believe that the legislature went through the idle formality of creating a board thus impotent. Defining the term "general supervision" in *Vantongeren v. Heffernan,* 5 Dak. 180, 38 N. W. 52, the court said:

"The secretary of the interior, and, under his direction, the commissioner of the general land office has a general 'supervision over all public business relating to the public lands.' What is meant by 'supervision?' Webster says supervision means "To oversee for direction; to superintend; to inspect; as to supervise the press for correction." And, used in its general and accepted meaning, the secretary has the power to oversee all the acts of the local officers for their direction; or as illustrated by Mr. Webster, he has the power to supervise their acts for the purpose of correcting the same; and the same power is exercised by the commissioner under the secretary of the interior. It is clear, then, that a fair construction of the statute gives the secretary of the interior, and, under his direction, the commissioner of the general land office the power to review all the acts of the local officers, and to correct, or direct a correction of, any errors committed by them. Any less power than this would make the 'supervision' an idle act,—a mere overlooking without power of correction or suggestion."

Defining the like term in *State v. Fremont etc. R. Co.*, 22 Neb. 313, 35 N. W. 118, the court said:

"Webster defines the word 'supervision' to be 'The act of overseeing; inspection; superintendence.' The board therefore, is clothed with the power of overseeing, inspecting and superintending the railways within the state, for the purpose of carrying into effect the provisions of this act, and they are clothed with the power to prevent unjust discriminations against either persons or places."

It seems to us that the term "general supervision" is correctly defined in these cases. Certainly a person or officer who can only advise or suggest to another has no general supervision over him, his acts or his conduct. The respondents contend that such a construction will substantially do away with county assessors and county boards of equalization, but this conclusion does not follow. How far the state board of tax commissioners may interfere with the local authorities in the valuation of local property for the purpose of local taxation, or how far the legislature may authorize such interference, is not involved in this case.

It is lastly contended that the legislature of 1907 has placed a legislative construction on the act of 1905, *supra.* In the first place the legislature of 1907 had no power to construe the act of its predecessor insofar as it related to past transactions, and in the second place, we fail to find wherein such legislative construction has been given. The section of the act of 1905 above quoted was reenacted without a change in 1907, Laws 1907, p. 508, and other provisions of the 1907 laws adopt an entirely new system for the assessment and taxation of railroad property. Laws 1907, p. 132. But we fail to find in all this any legislative construction of the act of 1905.

On the record before us we hold that there is a manifest inequality in the assessment of the properties of the appellant companies as between the different counties of the state for 1906, that the state board of tax commissioners acted within

its jurisdiction when it fixed the value of intercounty railroads for the purpose of taxation, and that the acts of the Snohomish county officials in disregard of the lawful orders and directions of their superior officers were void and of no effect.

The judgment of the court below is therefore reversed, with directions to overrule the demurrer.

HADLEY, C. J., FULLERTON, CROW, ROOT, and MOUNT, JJ., concur.