WIGGINS, J. (dissenting)
¶ 80 Suppose our legislature enacted a law providing that for an act of the governor to become effective, the action must be ratified by a commission of 10 appointed officials. There is no doubt such a law would be unconstitutional. But that is the situation we have in the state charter school act-with respect to charter schools, the constitutional responsibility of the superintendent of public instruction to supervise all matters pertaining to public schools has been largely reassigned to the state commission on charter schools, "an independent state agency." RCW 28A.710.070(1). Although the superintendent is a member of the commission on charter schools, the superintendent is 1 member of 11 and does not act alone. Id. at (3)(a).
¶ 81 I agree with Justice Madsen's dissent that the charter schools act violates article IX, section 2 of our state constitution. Other than my dissent and Justice Madsen's dissent, I agree with the lead opinion.
ANALYSIS
¶ 82 Article III, section 22 of the Washington Constitution provides, "The superintendent of public instruction shall have supervision over all matters pertaining to public schools, and shall perform such specific duties as may be prescribed by law." The key term for this case is the word "supervision," and I begin by defining it.
I. Meaning of "Supervision"
¶ 83 Webster's defines "supervision" as "the act, process, or occupation of supervising : direction, inspection and critical evaluation : OVERSIGHT, SUPERINTENDENCE ." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2296 (2002). To "supervise" means "to coordinate, direct, and inspect continuously and at first hand the accomplishment of : oversee with the powers of direction and decision the implementation of one's own or another's intentions : SUPERINTEND ." Id.
¶ 84 These words emanate action and authority. One who exercises supervision directs, inspects, and critically evaluates. One who supervises coordinates, directs, and inspects "continuously" in order to oversee the implementation of one's own or another's intentions. As a matter of common sense and normal usage, the meaning of "supervision" is to exercise control over other people in order to further a goal or agenda.
¶ 85 In addition to the dictionary, we have the benefit of the opinion of the Attorney General's Office (AGO), 1961 Op. Att'y Gen. No. 2, interpreting this same section of our *1163 state constitution and what it means for the superintendent of public instruction to supervise the public schools. The AGO was asked, "Would a statute providing that the state superintendent of public instruction shall be subordinate to the state board of education and be subject to its direction in matters pertaining to the public schools, be constitutional?" Id. at 1. The AGO answered that the constitution "charges the state superintendent in the broadest and most sweeping terms with the duty of supervision 'over all matters pertaining to public schools' " and, therefore, the legislature cannot "change or modify the supervision [by the superintendent of public instruction] over all matters relating to the public schools." Id. at 2.
¶ 86 The AGO explained more generally that the powers of an officer in an office created by the legislature may be changed by the legislature, " '[b]ut when an office is created by the constitution, it cannot be enlarged or lessened in scope by any statute, or be filled in any other manner than the manner directed by the constitution.' " Id. at 2-3 (quoting People ex rel. Ahern v. Bollam, 182 III. 528, 532, 54 N.E. 1032 (1899) ).
¶ 87 In light of these principles, the AGO concluded, "[l]t is the opinion of this office that any legislative enactment which would attempt to make the state superintendent subordinate to the state board of education and subject to its direction in matters pertaining to the public schools would be unconstitutional." Id. at 3.
¶ 88 In 1998, the AGO revisited these issues when asked several questions regarding the powers of the superintendent of public instruction, including:
What grant of authority and responsibility is given to the Superintendent of Public Instruction by the term "supervision" under this section? Does the term "supervision" place limits on the authority of the Superintendent of Public Instruction?"
1998 Op. Att'y Gen. No. 6, at 2.
¶ 89 The AGO distilled several principles from its review of the relevant authorities, most relevant for this opinion that article III, section 22 imposes a limitation on the legislature's power to infringe on the superintendent's powers of supervision. AGO opinion no. 6 suggests this test for the constitutional limits on infringing on the superintendent's powers:
If the proposal subordinates the Superintendent to some other officer or body (as discussed in AGO 1961-62 No. 2) or shifts so many responsibilities to other officers or agencies that the Superintendent no longer "supervises" the public school system, the proposal is probably unconstitutional. Otherwise, the Legislature is free to assign specific roles as it thinks best.
Id. at 4.
¶ 90 The AGO opinions expand on our understanding of the meaning of "supervision" by adding these additional indicia of an unconstitutional infringement on the powers of the superintendent: an attempt to make the superintendent subordinate to another entity, such as the state board of education, or shifting the supervision of elements of the public school system out of the responsibilities of the superintendent.
¶ 91 In addition to dictionary definitions and AGO opinions, at least one of our cases speaks to the importance of supervision. Great N. Ry. Co. v. Snohomish County , 48 Wash. 478, 484, 93 P. 924 (1908). Great Northern challenged the assessment of railroad property by the county assessor and state board of tax commissioners, arguing for a lower assessment by the state board. Id. at 479-80, 93 P. 924. The state board was given "general supervision" over county assessors and county boards of equalization. The county argued that the state board's general supervision over local assessors and boards gave the state board only the power to confer and advise, issuing only advisory opinions. Id. at 484, 93 P. 924. We unequivocally rejected the county's argument: "We cannot believe that the legislature went through the idle formality of creating a board thus impotent." Id. We approved Webster's definition of "supervision" as "overseeing; inspection; superintendence." Id. at 485, 93 P. 924. Consistent with the language of our constitution, dictionary definitions, and AGO opinions, our Great Northern decision emphasizes the active role of one who supervises, including *1164 oversight and correction of the supervised entity.
II. "Supervision" by the Superintendent of Public Instruction
¶ 92 I turn now to determining whether the charter school act unconstitutionally infringes on the superintendent's power of supervision. Article III, section 22 of the constitution broadly grants supervisory power to the superintendent: "The superintendent of public instruction shall have supervision over all matters pertaining to public schools."
¶ 93 This expansive language gives to the superintendent the power of oversight, inspection, and correction, as well as all other functions inherent in supervision, of all public schools. Charter schools are, of course, public schools. RCW 28A.710.010(5). The issue for us to decide is whether the charter school act gives the superintendent of public instruction supervision over charter schools. The answer is that with respect to charter schools, the superintendent has only supervisory power shared with 10 other members of the charter school commission. The constitutional grant of supervision to the superintendent calls for 1 individual to exercise supervision, not a group in which the superintendent holds less than 10 percent of the vote.
¶ 94 Chapter 28A.710 RCW establishes the Washington State Charter School Commission, which is by definition "an independent state agency." RCW 28A.710.070(1). Of the 11 members of the commission, 9 are appointed, some by legislators and others by the governor, the chair of the state board of education, and the superintendent of public instruction. RCW 28A.710.070(3). One of the powers of this charter school commission is to exercise "supervision" over the charter schools: "The commission shall, through its management, supervision, and enforcement of the charter contracts and pursuant to applicable law, administer the charter schools it authorizes in the same manner as a school district board of directors administers other schools." RCW 28A.710.070(2) (emphasis added). In short, the charter school act creates "an independent state agency" to which it delegates the power of supervision of the charter schools, which unconstitutionally reduces the control of the superintendent of public instruction from 100 percent strength conferred by the constitution to a mere 9 percent share devised by legislative mandate, i.e., 1 vote out of 11.
¶ 95 The constitutional violation embodied within the charter school act becomes even clearer upon a review of the act. The act is built around the powers given to "authorizes," which can authorize the creation and supervision of a charter school. RCW 28A.710.010(3). The act defines two entities that can authorize and operate charter schools: the charter school commission and a school district board of directors wanting to include charter schools within the district. Id .; RCW 28A.710.080. Authorizers have the power to "oversee the charter schools the entity has authorized." RCW 28A.710.010(3). No authority is given to the superintendent to exercise any oversight of the authorizer, which in the case of the charter school commission is "an independent state agency." RCW 28A.710.070(1). Thus, because there is no authority given to the superintendent to oversee the independent authorizers, the act deprives the superintendent of the constitutional power to superintend.
¶ 96 Repeatedly, the charter school act gives powers to the charter school commission and school district authorizers without giving any oversight to the superintendent. Some of the powers are as follows.
¶ 97 Charter school authorizers must file an annual report describing a number of subjects, including "[o]ngoing charter school oversight and evaluation." RCW 28A.710.100(3)(d). No authority is given to the superintendent to exercise his or her constitutional power of supervision.
¶ 98 The State Board of Education is responsible for "overseeing" the performance of school districts that are authorizers of charter schools. RCW 28A.710.120. The charter school act provides for imposition of sanctions and conditions on a poorly performing authorizer, but there is no role for the superintendent in this process. See id. Similarly, authorizers have the power to "continually monitor the performance and legal compliance" of the charter schools they have authorized.
*1165 RCW 28A.710.180(1). "An authorizer may conduct or require oversight activities that enable the authorizer to fulfill its responsibilities under this chapter, including conducting appropriate inquiries and investigations." Id. at (2). There is no role for the superintendent in this process.
¶ 99 Applications to become a charter school must be submitted to and approved by an authorizer in accordance with statutory requirements. RCW 28A.710.140. The charter school act makes no provision for the superintendent to supervise the application process.
¶ 100 An authorizer can terminate the contract of a charter school that fails to perform appropriately. RCW 28A.710.200. Once again, it is the authorizer that makes this decision and acts on it.
¶ 101 To recapitulate, the supervision of one particular kind of public school-the charter school-has been reassigned by the charter school act to the state charter school commission. The superintendent of public instruction is not a part of the supervision process, which is largely delegated to "authorizers." Nor can the superintendent supervise the charter school commission-of which the superintendent is 1 vote out of 11-because the Washington State Charter School Commission is "an independent state agency" and therefore not subject to the authority of the superintendent of public instruction. In Webster's words, the superintendent has lost the ability to "oversee with the powers of direction and decision the implementation of [the superintendent]'s intentions."
¶ 102 To summarize, the charter school act has given the authorizers of charter schools the following powers, among others: to "oversee" schools they charter, to report annually on their "oversight" of the schools they charter, to continually monitor the performance of their chartered schools, to review and act on applications from entities wanting to open a charter school, and to terminate schools that fail to perform. In the words of the AGO's 1998 opinion no. 6, the charter school act "shifts so many responsibilities to other officers or agencies that the Superintendent no longer 'supervises' the public school system," and this shift of power from the officer clothed with the constitutional power to supervise all aspects of the public schools is unconstitutional. 1998 Op. Att'y Gen. No. 6, at 4.
¶ 103 The lead opinion points to language in the charter school act that seems to the lead opinion to preserve the superintendent's power to supervise the charter schools: " 'Charter schools are subject to the supervision of the superintendent of public instruction and the state board of education, including accountability measures, to the same extent as other public schools, except as otherwise provided in this chapter.' " Lead opinion at 1153 (quoting RCW 28A.710.040(5) ). What the legislature has given to the superintendent in the first 30 words of this statute, the legislature has taken back in the final 7 words: "except as otherwise provided in this chapter." As discussed above, what is "otherwise provided in this chapter" is that the charter school commission, not the superintendent, is given the power of supervision of the charter schools while section after section of the act gives powers of oversight and supervision to the commission. Where the lead opinion sees "nothing in chapter 28A.710 RCW that qualifies or diminishes the superintendent's powers," id., I see sections that bestow on the commission the powers constitutionally given to the superintendent.
¶ 104 The lead opinion fails to offer any interpretation that might conceivably make the charter schools act consistent with our constitution. The Washington Constitution gives to the superintendent "supervision over all matters pertaining to public schools ...." CONST . art. Ill, § 22. The legislature has given to the charter school commission the power to exercise "supervision" of the charter schools, which are public schools. RCW 28A.710.070(2). The charter school commission is "an independent state agency." RCW 28A.710.070(1). This is an inherent conflict. The superintendent cannot supervise an independent agency. The constitution provides the key to resolving this deadlock: the power of supervision ultimately lies with the superintendent, not with the commission.
*1166 ¶ 105 The lead opinion attempts to justify this shift of the power of supervision by pointing to language in the charter school act that makes charter schools "subject to the supervision of the superintendent." RCW 28A.710.040(5). But this apparent grant of power to the superintendent is immediately qualified by the clause "except as otherwise provided in this chapter." Id.
¶ 106 The lead opinion attempts to trivialize the fact that the charter school act gives powers to the charter school commission and school district authorizers without giving any oversight of these powers to the superintendent. Lead opinion at 1153-54. But the lead opinion cannot escape the fact that the act specifically gives these powers to the commission without clarifying that the superintendent also retains these powers. The lead opinion fails to read the act as a whole. And as noted immediately above, the act declares that the superintendent retains the power of supervision, "except as otherwise provided in this chapter." RCW 28A.710.040(5). The delegation of specific powers to the commission denies the powers to the superintendent.
¶ 107 The issue before us is a specific application of an undisputed principle of constitutional law-powers that the constitution has given to a specific government official cannot be taken and bestowed on another government actor. Or, as was stated by a respected and influential judge and professor within a few years of our constitutional convention of 1889, "[S]uch powers as are specially conferred by the constitution upon the governor, or upon any specified officer, the legislature cannot require or authorize to be performed by any other officer or authority; and from those duties which the constitution requires of him he cannot be excused by law." THOMAS M. COOLEY, A TREATISE ON THE CONSTITUTIONAL LIMITATIONS WHICH REST UPON THE LEGISLATIVE POWER OF THE STATES OF THE AMERICAN UNION 135-36 (5th ed. 1998) (1883). The issue is whether the constitution has conferred on the official a power that the legislature has later tried to affix to a different official. That is exactly what we have in this case. The fact that the superintendent may be left with other duties, see lead opinion at 1152-54, does not rectify taking from the superintendent the one duty expressly mentioned in the constitution: supervision over "all matters pertaining to public schools."
¶ 108 As a result, the charter school act is unconstitutional. Before I turn to the consequence of the constitutional violation, I note that two sister states have held that statutes similarly infringed on similar language in their constitutions. Thompson v. Craney, 199 Wis.2d 674, 699, 546 N.W.2d 123 (1996) ; Powers v. State, 2014 WY 15, 318 P.3d 300, 302 (Wyo.2014). The constitutional provisions establishing the office of superintendent of public instruction in both constitutions are similar to Washington's, and the Supreme Courts of both states held that statutes infringing on the power of supervision were unconstitutional.
¶ 109 The Wisconsin Constitution provides, "The supervision of public instruction shall be vested in a state superintendent and such other officers as the legislature shall direct; and their qualifications, powers, duties and compensation shall be prescribed by law." WIS. CONST . art. X, § 1. The Wisconsin Supreme Court held that the original intent of the drafters was that the general supervision over the state education system was within the responsibility and authority of the superintendent. Thompson, 199 Wis.2d at 685, 546 N.W.2d 123.
¶ 110 Wyoming's constitution provides, "The general supervision of the public schools shall be entrusted to the state superintendent of public instruction [ (SPI) ], whose powers and duties shall be prescribed by law." WYO . CONST . art. VII, § 14. The Supreme Court of Wyoming held that although the legislature could alter the powers and duties of the SPI, it could not deprive the SPI of its constitutionally vested power of "general supervision of the public schools." Powers, 318 P.3d at 323.
III. Constitutionality of the Remaining Sections of the Act
¶ 111 When the court declares a part of a legislative act to be unconstitutional, the remaining provisions of the act are not necessarily unconstitutional; the question is whether the remaining provisions are severable *1167 from the unconstitutional provisions. League of Women Voters of Wash. v. State, 184 Wash.2d 393, 411, 355 P.3d 1131 (2015). "The test for severability is whether the unconstitutional provisions are so connected to the remaining provisions that it cannot be reasonably believed that the legislative body would have passed the remainder of the act's provisions without the invalid portions, or unless elimination of the invalid part would render the remaining part useless to accomplish the legislative purposes." Id. at 411-12, 355 P.3d 1131.
¶ 112 The charter school act includes a severability clause: "If any provision of this act or its application to any person or circumstance is held invalid, the remainder of the act or the application of the provision to other persons or circumstances is not affected." ENGROSSED SECOND SUBSTITUTE S.B. 6194, § 305, 64th Leg., Reg. Sess. (Wash. 2016). A severability clause indicates that the legislature would have passed the statute without the severed language, but it is not dispositive. The court must still evaluate whether the act would have been passed even without unconstitutional provisions.
¶ 113 The critical language for our purposes includes both the acknowledgement in the act that the superintendent of public instruction's power of supervision was being reduced-charter schools are subject to the superintendent's supervision "except as otherwise provided in this chapter," RCW 28A.710.040(5) -as well as the provisions allocating to the charter school commission powers of supervision without the superintendent's oversight or participation. As discussed above, the act includes the creation of the charter school commission as "an independent state agency" responsible for "oversight," "management," "supervision," and administration of the new charter schools, RCW 28A.710.070(1) - (2). The "independen[ce]" of the commission is reinforced by the requirement that all appointed members of the commission "shall have demonstrated an understanding of and commitment to charter schooling as a strategy for strengthening public education." RCW 28A.710.070(4).
¶ 114 The charter school act confers other powers on the commission that conflict with the constitutional grant of these powers to the superintendent. As an "authorizer" of charter schools, the commission has the power to create and supervise charter schools, to report on its "oversight and evaluation" of the charter schools it authorized ( RCW 28A.710.010(3), .100(3)(d) ); to continually monitor the charter schools it has authorized ( RCW 28A.710.180 ); to authorize the applications to become a charter school ( RCW 28A.710.140 ); and to terminate the contract of a charter school it has authorized (RCW 28A.710,200).
¶ 115 The specificity of the act's allocation to a new commission of key responsibilities in supervising the charter schools weighs against the conclusion that the act would have been passed without the powers granted to the commission-powers that the constitution confers on the superintendent.
¶ 116 On a more practical level, what statutory language would the court change in the charter school act to make the act constitutional? One possibility would be to strike from RCW 28A.710.040(5) the language "except as otherwise provided in this chapter," leaving the subsection to read, "Charter schools are subject to the supervision of the superintendent of public instruction and the state board of education, including accountability measures." How would that change affect the remaining allocations of supervisory power over charter schools? Would the commission continue to be solely responsible for creation, supervision, and termination of the charter schools it authorizes? Similar questions abound. In short, severing the offending language from the charter school act would leave the act incomplete and unworkable without further legislative direction.
¶ 117 The unconstitutional delegation of supervisory powers to the charter school commission cannot be segregated from the constitutional provisions. I would hold that the act is unconstitutional and therefore respectfully dissent.
Owens, J.