[No. 24663.   *En Banc.*   September 7, 1933.]

THE STATE OF WASHINGTON, *on the Relation of King County, Plaintiff*, v. THE STATE TAX COMMISSION *et al., Respondents.*[1]

[1]Reported in 24 P. (2d) 1094.

337

Robert M. Burgunder and *David J. Williams,* for relator.

*The Attorney General* and *R. G. Sharpe, Assistant,* for respondents.

*F. M. Dudley* and *Yantis & Brodie, amici curiae.*

MAIN, J.—This was an original application in this court for a writ of prohibition directed to the state

tax commission and Thomas S. Hedges and T. M. Jenner, members thereof. After the proceeding was instituted, by amendment it was changed into an application for a writ of mandamus, by which it was sought to require the tax commission to expunge from its records, vacate and set aside a reassessment of the inter-county operating property of the Chicago, Milwaukee, St. Paul and Pacific Railroad Company, and further commanding the commission not to certify the reassessments to the various county assessors of the state.

The operating property of the railroad for the years 1928, 1929, 1930, 1931 and 1932 had been regularly assessed by the commission, and the assessments equalized and certified to the county assessors. The railroad company had brought an action in the United States district court for the eastern district of this state, which action is still pending, to enjoin the collection of a portion of the taxes for the years 1928 to 1931, inclusive, on the ground that the respective assessments for those years were fraudulently excessive. The tax for 1932 had been paid under protest.

In 1931 (Laws of 1931, chapter 106, p. 306 [Rem. Rev. Stat., § 11301 *et seq.*]), the legislature passed an act entitled: "An Act providing for the re-assessment and re-taxation of property for past and future years, and declaring that this act shall take effect immediately." In pursuance of this act and in accordance with its provisions, the tax commission held a hearing, and on July 8, 1933, the commission reassessed the properties of the railroad company at from approximately eighteen per cent to approximately twelve per cent lower than they had been originally assessed by the tax commission and the board of equalization. Claiming that chapter 106 of the Laws of 1931, *supra,* is unconstitutional in providing for reassessments, the

present action was brought for the purposes above specified.

Section 2 of the act [Rem. Rev. Stat., § 11302] provides that, when any error in taxation has occurred in the assessment or taxation heretofore or hereafter made of any property taxable in this state, and such assessment seems to be excessive or void in whole or in part, such property shall forthwith, in the manner provided in this act, be re-listed, re-valued and re-taxed by the tax commission for the year or years in the assessment and taxation of which such error or errors in taxation was or were made.

In *State ex rel. State Tax Commission v. Redd,* 166 Wash. 132, 6 P. (2d) 619, it was held that the act was unconstitutional in so far as it provided that the state tax commission could reassess, for local taxation purposes, property within a county, city, town or other municipal corporation. Prior to the passage of chapter 106, this court had held that the tax commission had the power and the right to assess inter-county railroad operating property, equalize the same and certify the equalized value to the respective counties. *Great Northern Railway Co. v. Snohomish County,* 48 Wash. 478, 93 Pac. 924; *Northern Pacific Ry. Co. v. State,* 84 Wash. 510, 147 Pac. 45, Ann. Cas. 1916E, 1166.

The act, by its terms, covers not only property wholly within the boundaries of a city, town or other municipal corporation, but inter-county property, such as railroad and telegraph, which may extend through many counties. In determining whether the act in its entirety is unconstitutional by reason of the fact that it is held to be unconstitutional as to property within the boundaries of a city or a county, inquiry must be directed to whether the constitutional and unconstitutional provisions are so connected and interdependent in their meaning and purpose that it could not be

believed that the legislature would have passed one without the other; or where the part eliminated is so intimately connected with the balance of the act as to make it useless to accomplish the purposes of the legislature. *State v. Powles & Co.,* 90 Wash. 112, 155 Pac. 774; *Northern Cedar Co. v. French,* 131 Wash. 394, 230 Pac. 837; *Corwin Investment Co. v. White,* 166 Wash. 195, 6 P. (2d) 607.

In the act, there was a provision that, if any section or provision should be adjudged to be invalid or unconstitutional, such adjudication should not affect the validity of the act as a whole or any such provision or part thereof not adjudged invalid or unconstitutional. Such a provision furnishes assurance to the courts that they may properly sustain the separate sections or provisions of a partially invalid act without hesitation or doubt as to whether they would have. been adopted, even if the legislature had been advised of the invalidity of the part. *Hill v. Wallace,* 259 U. S. 44.

The impracticability of assessing, by counties, inter-county property is at once apparent, and needs not be elaborated upon. The property within the city or county and inter-county property being so distinct and separable, the fact that the act was held invalid as to the former does not render it unconstitutional as to the latter, and the legislature has made it clear that it would have passed the act as to inter-county property even though it had been advised as to the invalidity of such an act as to intra-county property.

It is said, however, that, since the decisions, above cited, in which it is held that the tax commission had a right to assess inter-county property, the section of the constitution on which they were based has been repealed by the fourteenth amendment thereto. The repealed section authorizes the legislature to provide,

by general law, for the assessing and levying of taxes on all corporate property. Art. 7, § 3. Even though the cases cited were based upon that section and the section has been repealed, it does not destroy the right of the legislature to pass an act providing for assessment by the state tax commission of inter-county property. There is nothing in the fourteenth amendment which prohibits such legislation. The power of taxation is an incident of sovereignty, and is possessed by the state without being expressly conferred by the people. It is a legislative power, and when the people, by the constitution, create a department of government upon which they confer the power to make laws, the power of taxation follows as a necessary part of the general power. *State ex rel. Thompson v. Nichols,* 29 Wash. 159, 69 Pac. 771; *State ex rel. Board of Commissioners v. Clausen,* 95 Wash. 214, 163 Pac. 744. The legislature had a right to enact chapter 106, even though not expressly authorized by the constitution.

Since the legislature had the power of taxation, it follows that it might confer such power upon such agencies as it deemed fit and proper for the valuation and equalization of inter-county properties. *In re Sanford,* 236 Mo. 665, 139 S. W. 376; *Mackin v. County Court,* 38 W. Va. 338, 18 S. E. 632. It follows that the tax commission had the power to make the order reducing the assessments upon the railroad company's property for the years mentioned, in so far as chapter 106 may be concerned.

■ Subsequent to the enactment of that chapter and in 1933 (Laws of 1933, chapter 10, p. 130 [Rem. 1933 Sup., § 11315-8]), the legislature passed an act entitled:

"An Act relating to taxation; providing for the settlement and compromise of litigation in connection therewith; repealing all acts and parts of acts in con-

flict therewith; and declaring that this act shall take effect immediately.''

Section 1 of the act, in part, provides that, whenever any action shall be commenced, or is pending, involving the valuation of property made by state or county officials for taxation purposes, in which action a reduction is sought of the assessed valuation of the property and the taxes levied thereon, the board of county commissioners and the prosecuting attorney of any county involved in such litigation may settle and compromise the same and agree with the tax payer as to the valuation of the property for taxation purposes for the year or years involved in the litigation. There is nothing in this act which is in conflict with chapter 106. In that act, the tax commission, as to inter-county property, has the right to assess and, upon complaint, revalue the property for taxation purposes. There is nothing in the act which authorizes the commission to settle or compromise litigation. In the 1933 act, the matter of compromising or settling litigation is referred to the county officers mentioned. Litigation pending would not necessarily be determined by revaluation and reduction of the taxation of inter-county property by the state tax commission.

It is a familiar rule of construction that repeals by implication are not favored. The act of 1933 does not expressly repeal chapter 106, and we find nothing in the later act from which it could be said that the prior act was repealed by implication.

We now come to the question of whether chapter 106 is an unlawful attempt on the part of the legislature to delegate judicial power to the tax commission or administration board, and to thereby usurp the functions of the court. As already pointed out, chapter 106 authorizes the tax commission to make reductions in assessments, but this does not necessarily

settle or compromise litigation. The authorizing of the tax commission to reassess does not delegate to that commission either legislative or judicial power. *Heidenway v. Harding,* 336 Ill. 606, 168 N. E. 630; *State Tax Commission v. Bailey & Howard,* 179 Ala. 620, 60 So. 913. Even though the litigation was pending at the time chapter 106 was passed by the legislature, it was not an unconstitutional interference with the judiciary. *Chicago, Rock Island & Pacific R. Co. v. Streepy,* 211 Iowa 1334, 236 N. W. 24; *People ex rel. Lucey v. Molloy,* 54 N. Y. S. 1084, 161 N. Y. 621, 55 N. E. 1099.

Section 6 of article IV of the constitution provides that the superior court shall have original jurisdiction in all cases involving the legality of any tax, impost or assessment. The law in question does not interfere with that jurisdiction, and the court is open to a taxpayer to litigate the question of the validity of the tax in whole or in part, even though it may have been reduced in amount by the tax commission. *Grays Harbor Lumber Co. v. Grays Harbor County,* 122 Wash. 625, 211 Pac. 270; *In re Metropolitan Building Co.,* 144 Wash. 469, 258 Pac. 473. The law does not confer upon the tax commission the judicial power given to the courts by the constitution.

This brings us to the question of whether the reassessments were void by reason of the fact that they were made by a board consisting of but two members.

Section 11087, Rem. Rev. Stat., provides that "the tax commission shall be composed of three members possessing special knowledge of the subject of taxation, . . ." Section 11089 provides that

"A majority of the members of said commission shall constitute a quorum. . . . The commission may by order refer to one of its members or its em-

ployees the duty of making investigations and/or taking testimony of and reporting thereon to the commission, but no determination shall be made except by a majority vote of the tax commission. . . ."

At the time the hearing was had and the resolution passed reducing the taxes of the railroad company, there were but two members of the commission. Sometime before, the other member had resigned, and there had been no appointment made to fill the vacancy.

As to whether, when the law provides for a commission of a certain number to whom shall be confided the discharge of a public duty, less than the entire number named have the power to act, the authorities are hopelessly in conflict. The cases of *Railway Co. v. Meyer,* 58 Kan. 35, 49 Pac. 89; *Schenck v. Peay,* 21 Fed. Cas. 667, and *Palmer v. Conway,* 2 Foster (N. H.) 144, may be cited as a part of those holding that the entire commission or body provided for must act, and that, where the law authorizes a commission of three, two, after the resignation of one, could not validly function. The cases of *Ford v. Manning,* 152 N. C. 151, 67 S. E. 325; *Trustees Slaughterville G. S. Dist. v. Brooks,* 163 Ky. 200, 173 S. W. 305; *Wilson v. Fromm,* 80 N. J. L. 582, 78 Atl. 193, may be cited as a part of those cases taking the opposite view.

There is running through some of the cases a distinction as to whether the duties to be performed are public or private in their nature; the courts saying that, if they are private in their nature, all members provided for in the law must act, but that, where the public service is involved, a majority may function, unless the law expressly provides otherwise. The courts, however, do not all make this distinction. In nearly all of the cases an important consideration is the language of the statute or constitutional provision with which the particular court was dealing at the time.

Section 604, Throop on Public Officers, refers to the rule that, where the powers to be exercised are a continuous public trust or duty and are confided to designated persons, the discharge of the public duty or trust is not to be interrupted or fail where there is an affirmative or united action by the majority, and the author refers to this as the "American rule." Under the law of this state, there is conferred upon the members of the tax commission the discharge of duties which are continuous and important. If two of the three, by united action, cannot function, the public service which the commission is intended to render might be seriously impaired. As an instance, the members of the tax commission constitute the state board of equalization, and its annual meetings are limited to a period of twenty days. Laws 1925, Ex. Ses., p. 273, § 70; Rem. Rev. Stat., § 11222. If a vacancy should occur during this period, it might be impossible or impractical to fill it before the time which the board could remain in session would expire.

Looking to the provisions of the act, we find that it is expressly provided that the commission shall be composed of three members "possessing special knowledge of the subject of taxation." When a vacancy occurs, to make such an appointment as the mandate of the statute requires necessarily requires time for investigation and consideration. In another section of the act, as set out above, it is stated that a majority of the commission "shall constitute a quorum," and that no determination shall be made except "by a majority vote of the tax commission."

The question in its last analysis is one of legislative intent. When the provisions of the law just mentioned are taken into consideration, the duties and public service that the members of the tax commission are required to render, it seems reasonably plain that the

legislature did not intend that the commission should not be able to function when there were only two members, if those members acted in unison. Generally speaking, the more modern cases tend to support what has been referred to as the "American rule," and we think that is the better doctrine. In any event, as already stated, it appears from the provisions in the act which we are now considering that such must have been the intention of the legislature.

The railroad company was not a party to this proceeding, but filed, through its counsel as *amicus curiae*, a brief and appeared at the oral argument. It was suggested that, since the railroad company was not a party, the court should not proceed with the hearing and determination of the application and thus affect vitally rights of the company without its having been made a party. From what has been hereinbefore said, it appears that no legal right of the railroad company as a taxpayer has been impaired by the act of the tax commission in reducing its assessments, and the court, in sustaining the act of the commission, does not take from the company its right to question the validity of the tax.

The question is presented in the briefs as to whether or not mandamus was an available remedy. But little need be said upon this question, since the writ is not to be granted, as hereinbefore indicated. Without going into detail, the cases of *State ex rel. Harris v. Hinkle*, 130 Wash. 419, 227 Pac. 861, and *State ex rel. LaFollette v. Hinkle*, 131 Wash. 86, 229 Pac. 317, may be cited as authorizing the proceeding.

One question is presented in the briefs which we shall not decide, and that is, the question of interest. The tax commission made no mention of the matter of interest in its resolution, and the question is not now before us. That question will arise, if it arises at all,

when the tax is paid, tendered, or a judgment is entered therefor. That is a question in which the railroad company is vitally interested, and it should not be determined in a proceeding to which it is not a party.

The writ will be denied.

BEALS, C. J., MITCHELL, HOLCOMB, MILLARD, STEIN-ERT, BLAKE, and TOLMAN, JJ., concur.