[No. 25891.   *En Banc.*   November 25, 1935.]

NORTHWESTERN IMPROVEMENT COMPANY, *Respondent,*
v. H. H. HENNEFORD *et al., Appellants.*[1]

*The Attorney General* and *R. G. Sharpe, Assistant,*
for appellants.

*L. B. daPonte* and *Robert S. Macfarlane,* for respondent.

[1]Reported in 51 P. (2d) 1083.

GERAGHTY, J.—The plaintiff, Northwestern Improvement Company, owns and operates an electric light and power system situate wholly within the confines of Kittitas county. Assuming to act under the authority of chapter 123, Laws of 1935, p. 356 (Rem. 1935 Sup., § 11156-1 [P. C. § 7088-31] *et seq.*), the defendants, composing the state tax commission, initiated proceedings looking to the valuation and assessment, for taxation purposes, of this electric system for local, as well as state, levies. The plaintiff, challenging the right of the defendants to so assess wholly intracounty property, brought this action in the superior court of Thurston county to restrain the defendants from further proceeding with the assessment.

In its complaint the plaintiff alleged that the defendants, as the tax commission of the state, assuming to act under the authority of chapter 123, Laws of 1935, p. 356, had declared their intention

". . . to value and assess said property, beginning with the year 1936, as provided by § 7 thereof, and plaintiff alleges that defendants will, unless restrained, proceed so to value and assess said property and to levy taxes thereon for said year 1936 and subsequent years."

This allegation is admitted in the answer of the defendants. After trial of the cause to the court, a decree was entered as prayed for, enjoining the defendants from further proceeding with the valuation and assessment of plaintiff's electric system. The defendants, who shall hereafter be referred to as the "commission," have appealed from the decree.

The commission asserts the right, in virtue of the authority devolved upon it by chapter 123, to value and assess, for all purposes, local as well as state, and to the exclusion of the assessing and equalizing officers of Kittitas county, the utility property of the respondent, although lying wholly within the county.

The respondent contends that, if chapter 123 is construed to authorize the valuation and assessment of its electric plant, wholly intra-county, the act is in violation of Art. XI, §§ 5 and 12, and Art. VII, § 9, of the state constitution, as construed by this court in *State ex rel. State Tax Commission v. Redd,* 166 Wash. 132, 6 P. (2d) 619.

Chapter 123, p. 356 (Rem. 1935 Sup., § 11156-1 [P. C. § 7088-31] *et seq.*), provides "for the assessment and taxation" of the operating property of various types of public service companies therein enumerated, including electric light and power companies, by the commission. The term "electric light and power company," as used in the act, is defined to mean,

". . . any person owning, controlling, operating or managing real or personal property, used or to be used for or in connection with or to facilitate the generation, transmission or distribution of electricity in this state, and engaged in the business of furnishing, transmitting, distributing or generating electrical energy for light, heat or power for compensation as owner, . . ." Rem. 1935 Sup., § 11156-1 [P. C. § 7088-31].

The term "person" is defined to mean "any individual, firm, copartnership, joint venture, association, corporation, trust, or any other group acting as a unit."

Section 7 of the act, p. 363 (Rem. 1935 Sup., § 11156-7 [P. C. § 7088-37]), requires the commission, beginning with the year 1936 and annually thereafter, to make an assessment of the operating property of all companies covered by the act, and between the 15th of March and the first of July, each year, to prepare an assessment roll, upon which it shall enter and assess the true cash value of all the operating property of each company, as of the first day of

March of the year in which the assessment is made.

Section 14, p. 367 (Rem. 1935 Sup., § 11156-14 [P. C. § 7088-44]), provides that the assessment rolls of companies assessed under the provisions of the act shall be reviewed, examined, and corrected by the state board of equalization at its annual September meeting for the purpose of equalizing the assessed valuation of the taxable property of the state.

Section 15, p. 368 (Rem. 1935 Sup., § 11156-15 [P. C. § 7088-45]), provides that the value of the operating property of a company, as fixed and determined by the state board of equalization, shall be apportioned by the commission to the respective counties and to the taxing districts thereof, in accordance with a detailed plan embodied in the section.

Section 16, p. 370 (Rem. 1935 Sup., § 11156-16 [P. C. § 7088-46]), provides that, when the state board of equalization shall have determined the equalized assessed value of the operating property of each company in each of the respective counties and in the taxing districts thereof, in the manner provided, the commission shall certify such equalized assessed value to the county assessor of the proper county, and the assessor shall enter the company's real operating property upon the real property tax rolls and the personal property upon the personal property tax rolls of each county, together with the values so assessed,

". . . and the same shall be and constitute the assessed valuation of the operating property of the company in such county and the taxing districts therein for that year, upon which taxes shall be levied and collected in the same manner as on the general property of such county."

Section 17, p. 370 (Rem. 1935 Sup., § 11156-17 [P. C. § 7088-47]), provides that all property of any

company, not assessed as operating property under the provisions of the act, shall be assessed by the assessor of the county wherein it may be situate, in the same manner as the general property of the county.

██ The case of *State ex rel. State Tax Commission v. Redd,* 166 Wash. 132, 6 P. (2d) 619, involved the constitutionality of chapter 106, Laws of 1931, p. 306, Rem. Rev. Stat., § 11301 [P. C. § 6882-197] *et seq.,* in so far as it purported to authorize the tax commission to revalue, reassess, and retax property in any county,

"Whenever it shall appear to the tax commission from any protest accompanying the payment of taxes heretofore or hereafter filed with any county or state board or officer, or petition or complaint heretofore or hereafter served or filed in any court for or on behalf of such taxpayer and an investigation of the facts upon which such protest, petition or complaint is based that any error in taxation has occurred in the assessment or taxation heretofore or hereafter made of any property taxable in this state, and such assessment appears to be excessive or void in whole or in part. . . ."

Proceeding under the authority of that act, the commission reassessed certain lands in Franklin county, suits contesting the original assessments having been brought in the superior court. The county assessor refused to enter upon the assessment roll the valuation fixed by the commission or to use the valuation as a basis for computing and extending a tax against the land involved. Thereupon, the commission brought suit for a writ of mandate requiring the assessor to comply with the commission's order. Upon appeal, this court held chapter 106 unconstitutional, in so far as it attempted to authorize the commission to reassess, for local taxation purposes, prop-

erty within a county or other municipal corporation. In reaching this conclusion, the court held that the statute violated the following sections of the state constitution:

"The legislature shall have no power to impose taxes upon counties, cities, towns, or other municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but may by general laws vest in the corporate authorities thereof the power to assess and collect taxes for such purposes." Const. Art. XI, § 12.

"For all corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes, and such taxes shall be uniform in respect to persons and property within the jurisdiction of the body levying the same." Const. Art. VII, § 9.

"The legislature, by general and uniform laws, shall provide for the election in the several counties of boards of county commissioners, sheriffs, county clerks, treasurers, prosecuting attorneys, and other county, township, or precinct and district officers, as public convenience may require, and shall prescribe their duties and fix their terms of office." Const. Art. XI, § 5.

In the course of its opinion, the court said:

"Under the first part of the constitutional provision (Art. XI, § 12), the legislature is shorn of its power to impose taxes for county purposes. What then? How could the county exist without funds, and without the power to raise funds to meet its necessary expenses? If it were not for the second part of the constitutional provision, investing the legislature with a portion of the power of which it had been divested, it is clear that the legislature could not delegate a power it did not have. If the legislature were without power to impose taxes for county purposes, plainly it could not delegate the power to any person, board or corporation.

"By the second part of Art. XI, § 12, of the constitution, it is provided that the legislature may, by

general laws, vest in the corporate authorities of counties, cities, and other municipal corporations, authority to assess and collect taxes for local purposes. Pursuant thereto, the legislature delegated to the counties, cities and other municipal corporations, power to levy taxes by their local officers for local purposes. The only restriction upon the county's or municipality's power of taxation is that the taxes shall be imposed for public purposes only, limited to a certain rate or amount, assessed on the basis of the value of the property to be ascertained in proceedings in which the taxpayer's constitutional rights are protected, etc.

"The constitutional provision is a limitation upon the power of the legislature to delegate the right of local taxation to any other than the local authorities of the county, city, town or other municipal corporation concerned.

" 'The constitution declares the rule of uniformity and equality of taxation; it fixes the standard of valuation by which that rule shall be preserved and enforced; it provides for the selection of an officer for each county to perform the duties of assessing persons and property. It is silent as to details, leaving to the legislature the power and duty of formulating the scheme of taxation, subject to the restrictions imposed by the general provisions it does contain.

" 'Unquestionably, the constitution contemplates and requires an assessment of property as a condition of its taxation. Assessment is the listing and valuation of property liable to taxation according to law. It is essential for the apportionment of all *ad valorem* taxes. Cooley on Taxation, 259. And an assessment can only be made by the officer designated by law to make it.' *State v. Tonella,* 70 Miss. 701, 710, 14 South. 17, 22 L. R. A. 346.

"It is not within the power of the legislature to take from the people of counties, cities, and other municipal corporations, the right of local self-government secured to them by our constitution."

We deem it unnecessary to restate the reasoning or authorities leading the court to its conclusion in that case. While the case has been distinguished in some particulars, the court has not departed from the essential principle there announced.

In the recent case of *State ex rel. Tacoma School Dist. v. Kelly,* 176 Wash. 689, 30 P. (2d) 638, we said:

"It is contended, however, that the plaintiff district is entitled to a levy of ten mills on the latter amount, because that is the assessed valuation as fixed by the state board of equalization for state purposes. Appellant conceives that the case of *State ex rel. Showalter v. Cook,* 175 Wash. 364, 27 P. (2d) 1075, supports this contention. This is a misapprehension of the holding in that case. It was there held that the state board of equalization, in equalizing assessments and levying taxes for state purposes, is not bound by the valuations as fixed by county assessors. In other words, for *state purposes* the state board of equalization has the power to fix the assessed valuation of taxable property in the various counties at fifty per cent of the true and fair value of such property. It does not follow, however, that this valuation may be used as a basis for levy of taxes for local purposes. On the contrary, it cannot be, in view of Article XI, § 12, of the constitution, . . .

"In *State ex rel. State Tax Commission v. Redd,* 166 Wash. 132, 6 P. (2d) 619, construing chapter 106, Laws of 1931, p. 306 (Rem. Rev. Stat., § 11301 *et seq.*), in the light of this provision of the constitution, we said:

" 'Manifestly, the legislature not possessing such power, the state tax commission (an agency created by the legislature) can not legally assess property within the limits of a county for county purposes. It follows that the state tax commission is likewise without authority to reassess such property for the same purpose.

" 'If the local authorities only, as we hold, have the power to list and value property within the county for local taxation purposes, no other authorities can

legally relist and revalue that property for local taxation purposes.' . . .

"It seems clear to us that to permit the appellant to make its levy on the basis of the valuation fixed by the state board of equalization would, in effect, amount to an imposition of taxes by the legislature 'upon counties, cities, towns or other municipal corporations' for *local purposes.*"

While tacitly conceding that the *Redd* case is controlling, in so far as ordinary county property is concerned, the commission seeks to draw a distinction between such property and the operating property of a public utility. While undoubtedly the property of a public utility may require the consideration of different elements in its assessment, this does not necessarily require its appraisal by a different governmental agency. No reason has been suggested why the county assessor may not assess utility property wholly within his county as efficiently and effectively as he assessed all other types of county property.

It is true that our decisions recognize the right of the commission to assess the inter-county operating property of railroads and other utilities, but the power to assess these inter-county properties as an entity arises out of the necessity of the case.

"The impracticability of assessing, by counties, inter-county property is at once apparent, and needs not be elaborated upon." *State ex rel. King County v. State Tax Commission,* 174 Wash. 336, 24 P. (2d) 1094.

Touching this phase of the question, we said in *State ex rel. State Tax Commission v. Redd, supra:*

"True, in the application of the unit system, we held in *Great Northern Ry. Co. v. Snohomish County,* 48 Wash. 478, 93 Pac. 924, and other cases, that the legislature may provide, without violating the constitution, for assessment of all the property of a railroad company used for railroad purposes, and appor-

tioning it among the counties in proportion to the number of miles of track therein; that all property of the railroad company not used for strictly railroad purposes, or that which is incidental or accessory to the railroad, is assessable and taxable by the local authorities. The reason for the rule is tersely stated in *Ames v. People,* 26 Colo. 83, 56 Pac. 656, as follows:

" 'Uniformity and equality in all respects can never be exactly attained, and all that legislation has hitherto been able to accomplish, or perhaps ever will be able to achieve, is to approximate that end. This method of apportionment, in our judgment, gives to each local taxing district its just proportion of tax, that is to say, each taxing district gets for purposes of taxation the just valuation of the property physically situate within its territorial limits; for the value of property situate therein cannot be made to depend upon its so-called natural *situs,* entirely disassociated from the use made of it, but that value, in great measure, depends upon its connection with every other part of the corporation property so used, and situate in every other taxing district in which any part of its railroad lies, considered always in connection with the character of the use made of it.' "

We have been cited no case in which this court has held that strictly intra-county property may be assessed for local purposes by the commission merely because of its use as a public utility. It may be, as the commission contends, that such assessments have been made, but if so, the question of their legality was not raised.

The appellants introduced testimony in the lower court tending to show that assessments of wholly intra-county railroads have been made by the commission or its predecessors since 1908, and this is urged as a legislative construction of the constitutional provisions involved. Passing the question of the right of the legislature to construe the constitution, chapter 123, p. 356, here involved, was enacted by the

1935 legislature subsequent to the *Redd* and *Tacoma School District* cases, and it is to be presumed the legislature had in mind the principles of law announced in those cases.

█ From what we have said, it follows that, if chapter 123, p. 356, be construed to authorize the assessment of the intra-county utility operating property of the respondent, it is, to that extent, unconstitutional. But a reading of chapter 123, in the light of the court's antecedent construction of applicable constitutional provisions, and having in mind the accepted maxim that an act of the legislature will be construed, if fairly possible, so as to avoid the conclusion that it is unconstitutional, leads us to the conclusion that it was not the legislative intent to vest in the commission the power to assess intra-county utility systems. True, general language is employed, but we note frequent expressions in the act which imply that the legislature had in mind only inter-county systems. In § 15, p. 368, it is provided that the value of the operating property of a company, when determined by the state board of equalization, shall be apportioned by the commission to the respective counties and to the taxing districts thereof. Section 16, p. 370, provides that, when the state board of equalization shall have determined the equalized assessed value of the operating property of each company

"In each of the respective counties and in the taxing districts thereof, as hereinabove provided, the commission shall certify such equalized value to the assessor of the proper county."

Section 17, p. 370, provides that any property not assessed as operating property under the act shall be assessed by the "assessor of the county wherein the same may be located or situate," the same as the

general property of the county. It is significant, too, that, notwithstanding the question that had theretofore arisen with respect to the right of the commission to tax intra-county property, the act does not, in terms, confer the power.

The judgment of the superior court will be affirmed.

MILLARD, C. J., MAIN, MITCHELL, TOLMAN, HOLCOMB, STEINERT, and BEALS, JJ., concur.

BLAKE, J. (dissenting)—It is with much reluctance that I enter a dissent in this case, for it cannot be denied that it falls within the principle of *State ex rel. State Tax Commission v. Redd,* 166 Wash. 132, 6 P. (2d) 619. I am impelled to do so, however, because I believe the decision in that case is fundamentally unsound, in that it fails to distinguish between *assessment for taxation* and the *levy of taxes.*

As I understand it, the *Redd* case holds that the fixing of the valuation of property for purposes of taxation is an imposition of taxes in contemplation of Art. XI, § 12, of the constitution, which provides:

"The legislature shall have no power to impose taxes upon counties, cities, towns, or other municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but may by general laws vest in the corporate authorities thereof the power to assess and collect taxes for such purposes."

The term "assessment" is all too frequently loosely used with respect to the processes of taxation. It is sometimes used, as in chapter 123, Laws of 1935, p. 356, Rem. 1935 Sup., § 11156-1 [P. C. § 7088-31] *et seq.,* with respect to the determination of the value of property for purposes of taxation. In other instances, as in the opinion in this case and that in the *Redd* case, it is conceived to be the equivalent of *levy.*

Now, if we forget for a moment the term "assessment" and look only to what chapter 123, Laws of 1935, p. 356, seeks to accomplish, it seems to me that it must be apparent that the act has nothing whatever to do with the *imposition of taxes,* in the sense contemplated by § 12, Art. XI, of the constitution. It is clear that the act has no such intent or purpose. Section 16 of the act provides:

"When the state board of equalization shall have determined the equalized assessed value of the operating property of each company in each of the respective counties and in the taxing districts thereof, as hereinabove provided, the commission shall certify such equalized assessed value to the county assessor of the proper county. The county assessor shall enter the company's real operating property upon the real property tax rolls and the company's personal operating property upon the personal property tax rolls of his county, together with the values so apportioned, and the same shall be and constitute the assessed valuation of the operating property of the company in such county and the taxing districts therein for that year, *upon which taxes shall be levied and collected in the same manner as on the general property of such county.*" (Italics mine.)

Now, all that this authorizes the state tax commission to do is to fix the valuation of property as a basis for taxation—not to levy taxes for local purposes.

It is recognized by all the text writers and by most of the cases that the fixing of the valuation of property for purposes of taxation does not constitute the *levy* of taxes. Cooley defines assessment as follows:

"An assessment, strictly speaking, is an official estimate of the sums which are to constitute the basis of an apportionment of a tax between the individual subjects of taxation within the district." 3 Cooley on Taxation (4th ed.), § 1044.

And of *levy,* he says:

"Strictly speaking, a levy is the legislative act, whether state or local, which determines that a tax shall be laid, and *fixes its amount* . . ." 3 Cooley on Taxation (4th ed.), § 1012.

Now, it is clear that chapter 123, Laws of 1935, does not attempt to lay or fix the amount of any tax. It merely provides a *method* of fixing an "estimate of the sums which are to constitute the basis of an apportionment of a tax between the individual subjects of taxation."

Neither § 12, Art. XI, nor any other provision of the constitution, prescribes or limits the method or manner in which this shall be done. In the absence of such a constitutional limitation, the legislature itself may fix the valuations (*Faust v. Building Association,* 84 Md. 186, 35 Atl. 890); or it may delegate the authority to a state board (*State v. State Board of Equalization,* 56 Mont. 413, 185 Pac. 708, 186 Pac. 697); or it may delegate the authority to any other agency or agencies, such as county assessors (*Shippen Bros. Lumber Co. v. Elliott,* 134 Ga. 699, 68 S. E. 509).

Of course, in those states where assessors are constitutional officers, the legislature can neither exercise the power itself nor authorize its exercise by any but the officers designated by the constitution. *Hawkins v. Mangum,* 78 Miss. 97, 28 So. 872. County assessors, however, are not constitutional officers in this state. See Const. Art. XI, § 5. They derive their existence, powers and functions solely through legislative enactment. They are agents of the legislature, and their very existence is dependent on its will. There is no constitutional limitation that I can find which would prevent the doing away with county assessors entirely and delegating their functions to some other agency.

I am not so much concerned over the result of this litigation. From a practical standpoint, so far as this particular case is concerned, I think it matters little whether the valuation of respondent's properties is fixed by the state tax commission or the county assessor (although it would seem apparent that the former is much better equipped to perform the function than the latter). But I am deeply concerned over what I conceive to be the judicial limitation (wholly unwarranted by any provision of the constitution) which this decision imposes upon a legislative power—a power which, if we are to approach anything like equality and uniformity in taxation, must be left untrammeled, so long as it is not used in violation of any constitutional right of the taxpayer.

Neither the taxpayer nor the municipal corporation has any interest, guaranteed by the constitution, in the *method* of evaluating property for purposes of taxation. So long as there is equality and uniformity, the taxpayer cannot complain. The municipality can readily adjust its levy to any valuation fixed by any agency the legislature may designate. For a ten mill levy on a thousand dollar valuation will produce the same revenue as a five mill levy on a valuation of two thousand dollars.

In any event, Kittitas county is not here questioning the power of the legislature to designate the state tax commission, rather than the county assessor, as the agency to evaluate respondent's properties. And I do not believe any authority can be found, under any state constitution, holding that a taxpayer has a constitutional right to have the valuation of his property fixed by one agency of the state rather than another, unless the constitution itself designates the agency.

The respondent can have no cause for complaint

until it can show that valuations placed on its property are greater than valuations placed upon property of like kind and character. It would have that right whether the valuation is fixed by the same or different agencies.

I think the judgment should be reversed.