[No. 28394. *En Banc.* September 18, 1941.]

PUGET SOUND POWER & LIGHT COMPANY, *Appellant,* v. KING COUNTY, *Respondent,* THE STATE OF WASHINGTON, *Appellant.*[1]

[1]Reported in 116 P. (2d) 827.

*Todd, Holman, Sprague & Allen* and *Emory E. Hess,* for appellant Puget Sound Power & Light Company.

*The Attorney General* and *Ralph B. Sproule, Assistant,* for appellant State of Washington.

*B. Gray Warner* and *Lloyd W. Shorett,* for respondent.

*R. G. Sharpe, amicus curiae.*

BEALS, J.—Plaintiff herein, Puget Sound Power & Light Company, a corporation, is an electric light and power company, within the meaning of Laws of 1935, chapter 123, p. 356 (Rem. Rev. Stat. (Sup.), § 11156-1

[P. C. § 7088-31] *et seq.*). It operates an electric system throughout nineteen counties in the state of Washington, including King county. It also owns and operates a steam heating utility in the city of Seattle, which furnishes steam for heating to buildings throughout the business section of the city. The only connection between the steam plant and plaintiff's electric power plants and lines is that a small proportion of the steam produced comes from two electric boilers heated during off-peak hours by surplus electric current.

After the enactment of the 1935 statute above referred to, the state tax commission classified plaintiff's property, dividing it into operating and non-operating property, as required by the act, and thereafter assessed the property classified as operating, for purposes of taxation. The commission classified and assessed the Seattle plant and steam heating system as operating property, including it in the list of plaintiff's personal property at an assessed valuation of $267,054 (as a basis for the 1940 tax), the tax on the plant, after deducting a three per cent rebate for early payment, amounting to $14,120.40.

During the year 1939, the assessor of King county, disregarding the proceedings of the state tax commission, and without the reduction of the assessment of plaintiff's property as made by the commission, entered the steam heating system as a separate item on the 1940 personal property tax rolls of King county, at an assessed valuation of $445,000, the tax thereon, less the three per cent rebate, amounting to $23,529.24.

March 15, 1940, plaintiff paid both 1940 taxes, together with all its other taxes, entering a protest as to the payment of the double taxation on the heating plant. June 13, 1940, plaintiff instituted this action to recover the amount which it had paid under protest, also asking other relief, which will be discussed

later. By its answer, the county admitted many of the allegations of the complaint, while denying others.

The state of Washington requested and received permission to intervene in the action, which was tried to the court, resulting in the entry of findings of fact and conclusions of law, followed by a judgment granting the plaintiff recovery of the amount of the tax which it paid pursuant to the assessment on the steam heating plant as made by the state tax commission. The judgment also dismissed the intervention of the state of Washington, the attorney general having participated in the trial and called a witness, whose testimony was received by the court and is included in the statement of facts.

From the judgment entered, the plaintiff (which will hereinafter be referred to as appellant) and the state of Washington have prosecuted separate appeals.

Appellant assigns error upon the ruling of the trial court to the effect that the state tax commission was without jurisdiction to assess the steam heating system, and that the jurisdiction to assess the same for purposes of taxation pertained to the assessor of King county. Appellant also contends that the trial court erred in refusing to award judgment in its favor on account of double taxes which it paid upon a portion of its King county real property for the years 1936 and 1937.

The state of Washington (which will hereinafter be referred to as the state) assigns error upon the dismissal of its intervention.

It appears from the record that, after the trial had proceeded for some time, the state of Washington, through its attorney general, orally moved for leave to intervene, and without objection from either party, the court allowed the intervention. The intervention was properly allowed, as the state was concerned in

the matter because of the acts of the state tax commission, which were, to some extent, antagonistic to the position taken by the county assessor. Why the court dismissed the intervention of the state at the time of entering judgment in the action, is not clear. In view of our opinion on the merits of the proceeding, the dismissal of the state's intervention has become unimportant, and would involve only a matter of costs in this court, with which we are not disposed to concern ourselves. The record contains the testimony introduced on behalf of the state, and we have the benefit of the brief filed by the attorney general. We reserve any questions, going to the merits of the state's right to intervene in the action and maintain an appeal from the order dismissing the intervention, for consideration at some future time, when the matter may be of practical importance. We shall affirm the judgment in so far as it dismissed the intervention.

■ Considering the principal question here presented, to wit, whether the state tax commission may fix, for purposes of taxation, the value of appellant's steam plant, respondent relies upon the case of *State ex rel. State Tax Commission v. Redd,* 166 Wash. 132, 6 P. (2d) 619. In that case we held that chapter 106, Laws of 1931, p. 306 (Rem. Rev. Stat., § 11301 [P. C. § 6882-197] *et seq.*), in so far as it purported to vest in the state tax commission authority to reassess, for purposes of local taxation, intracounty property, was unconstitutional as in violation of Art. XI, § 12, of our state constitution.

In the case of *Northwestern Improvement Co. v. Henneford,* 184 Wash. 502, 51 P. (2d) 1083, also cited by respondent, we held that chapter 123, Laws of 1935, p. 356 (Rem. Rev. Stat. (Sup.), § 11156-1 *et seq.*), did not vest the state tax commission with authority

to assess intracounty operating property of public service corporations.

Appellant argues, first, that the case at bar may be distinguished on its facts from the two cases above cited, and further, that the two cases are wrong in principle and should be overruled. Appellant also argues that the case at bar involves an attempt by the county to indirectly attack the jurisdiction of the state tax commission, and that for this reason the cases cited are not controlling. In support of its attack upon the *Redd* and *Northwestern Improvement Co.* cases, appellant cites *State ex rel. Seattle v. Carson,* 6 Wash. 250, 33 Pac. 428, and *Opportunity Township v. Kingsland,* 194 Wash. 229, 77 P. (2d) 793. Both the *Carson* case and the *Redd* case were considered in the *Opportunity Township* case, and it is not necessary to further consider these cases as bearing upon the question here presented.

In the case of *Northwestern Improvement Co. v. Henneford, supra,* we held directly that, in enacting chapter 123, Laws of 1935, the legislature intended that the statute apply only to the intercounty property of the utility companies referred to in the act.

Under the authority of the case last cited, we hold that, under the statute referred to, the state tax commission had no authority to make any original assessment of appellant's steam plant.

No question is here presented as to the effect of an assessment of utility property by the state tax commission, acquiesced in by the county authorities, and resulting in the levy of a tax which was paid by the property owner.

It is next contended that, under Rem. Rev. Stat., § 11091 [P. C. § 6874-5], defining the powers and duties of the tax commission, it should be held that the assessed value of appellant's steam plant as fixed

by the commission should prevail over the assessed value as established by the county assessor. Generally speaking, the section of the statute cited confers upon the commission authority to exercise general supervision and control over the administration of the assessment and tax laws of the state, and over county assessors and other county and township officers, in the performance of their duties relating to taxation; also to examine the work of county assessors at any time, and to order any county or township board of equalization to raise or lower the valuation of any taxable property. In this connection, appellant cites several of our opinions.

The laws relied upon by appellant in this connection do not confer upon the state tax commission authority to make original assessments for taxation purposes of intracounty property, such as appellant's steam plant. The authority of the tax commission is limited to the statutory provisions, and we find no basis in the statute for holding that an original assessment by the state tax commission should prevail over an assessment by the county assessor which has not been reviewed by the state tax commission under its statutory authority.

In the case of *Northwestern Improvement Co. v. Henneford, supra,* we stated that the tax commission possesses authority to assess, for taxation purposes, the intercounty property of the public utilities referred to in the act, citing *State ex rel. King County v. State Tax Commission,* 174 Wash. 336, 24 P. (2d) 1094. Appellant argues that it should be held that the steam plant constitutes a portion of its intercounty system, and that under the exception noted in the *Northwestern Improvement Co.* case, should be assessed by the state tax commission. We cannot follow appellant in its argument on this phase of the case. The steam plant constitutes no part of appellant's inter-

county system, nor has it any special value as a part of that system which operates outside of King county. It constitutes no part of appellant's electric light and power system, and could be separated therefrom without impairing the value of the system, and with little effect upon the operation of the steam plant. The fact that possibly up to one-sixth of the steam generating capacity of the steam plant operates through electricity does not change the situation. Specific property should not be valued as a part of an entire utility operation under the unit method of valuation, unless it be actually an operating part of the larger unit.

In volume 2 of Cooley on Taxation (4th ed.), § 811, p. 1657, the rule as to the taxation of property under the unit system, having, naturally, reference generally to utility properties running through several states, is considered. In the section cited is found the following:

"However, the only reason for allowing a state to look beyond its borders when it taxes the property of corporations is that it may get the true value of the things within it, when they are part of an organic system of wide extent that gives them a value above what they otherwise would possess."

A general rule as to utility property in different states is discussed in the following cases: *Standard Oil Co. v. Howe,* 257 Fed. 481; *State ex rel. Attorney General v. Lion Oil Refining Co.,* 171 Ark. 209, 284 S. W. 33; *American Bauxite Co. v. Board of Equalization,* 119 Ark. 362, 177 S. W. 1151.

For purposes of assessment for taxation, the steam plant is purely intracounty property, to be assessed by the county assessor.

Consideration of the manner in which the litigation developed, which resulted in respondent county as a defendant asserting and relying upon the action of the county assessor, does not require, as argued by

appellant, a holding that the assessed value of the steam plant as fixed by the state tax commission should control over the action of the county assessor in fixing the valuation upon the same property.

We shall now consider appellant's contention that the trial court erred in refusing to allow it to recover taxes on certain of its property for the years 1936 and 1937, which appellant paid under protest.

Appellant's steam plant, including coal bunkers, etc., covers several different descriptions of real estate, one an irregular tract of land lying east of block 195 of the plat of Seattle tidelands. During the years 1936 to 1939, both inclusive, this irregular tract was assessed by the state tax commission, along with other operating property of the company, and taxes were levied pursuant to this assessment and paid by appellant. Shortly before the institution of this action, appellant discovered that, during the four years referred to, the county assessor had assessed the irregular tract of tidelands above referred to, as "Terry's Third Addition, block M," followed by a correct description of the property by metes and bounds, the latter description showing that the property was not, in fact, any portion of Terry's Third Addition. Evidently these taxes, levied pursuant to the county assessor's proceedings, were never called to appellant's attention.

Upon discovering the situation, appellant paid under protest the four years' taxes levied pursuant to the assessment by the county assessor, and in this action asked that it be allowed judgment against respondent county for the taxes so paid. The trial court granted appellant judgment for the taxes for 1938 and 1939, but held that appellant's action, in so far as it concerned the taxes for 1936 and 1937, was barred by Rem. Rev. Stat., § 11315-6 [P. C. § 6882-194], which reads as follows:

"No action instituted pursuant to this act or otherwise to recover any tax assessed or levied prior to the passage of this act shall be brought subsequent to January 30th, 1932. No action instituted pursuant to this act or otherwise to recover any tax levied or assessed subsequent to the passage of this act shall be commenced after the 30th day of the next succeeding January following the date when said tax is payable."

Respondent does not object to the amount of recovery which the court allowed appellant based upon its payment of the taxes for the years 1938 and 1939, and no question concerning the correctness of the court's judgment as to that matter is before us.

The section of the statute last above quoted was reenacted as a portion (§ 48, p. 772) of chapter 206, Laws of 1939, the section amending § 6, chapter 62, Laws of 1931, p. 204, by extending five months the period within which such an action as is referred to in the section might be instituted. Chapter 62, Laws of 1931, p. 201, was enacted by the legislature for the purpose of expediting the collection of taxes and prescribing a method by which a taxpayer could present to the courts his claim that the taxes levied against his property were unjust. Section 1 of the act of 1931 (Rem. Rev. Stat., § 11315-1 [P. C. § 6882-189] *et seq.*) reads as follows:

"Injunctions and restraining orders shall not be issued or granted to restrain the collection of any tax or any part thereof, or the sale of any property for the non-payment of any tax or part thereof, except in the following cases:

"(1) Where the law under which the tax is imposed is void; and

"(2) Where the property upon which the tax is imposed is exempt from taxation."

Whether or not property upon which the owner has paid the taxes for a certain year is as to that year

exempt from any other tax of the same nature as the tax which he had paid, is a question not here presented, and upon which we express no opinion.

Manifestly, the purpose of § 11315-6, *supra,* is to require a prompt attack upon a tax which the owner of the property believes unlawful.

Appellant argues that the statutory limitation contained in § 11315-6, *supra,* does not commence to run until the tax is paid, as until the tax is paid no action to recover the same may be commenced. We cannot follow this argument. Manifestly the intent of the statute is to bar actions instituted after the expiration of the period fixed by the statute, brought for the recovery of taxes paid. Otherwise the statute might have little effect, as if a property owner, by neglecting to pay his taxes, which he knew, or in law is held to have known, had been levied against his property and were unpaid, could postpone indefinitely his right to litigate the question of the lawfulness and regularity of the tax standing against his property, the purpose of the statute would be to a great extent defeated. The evident purpose of the section is to prevent this very thing, and to require a prompt attack upon what the property owner believes to be an illegal or unjust tax.

Appellant in bringing its action followed the procedure provided for by Rem. Rev. Stat., § 11315-1, *et seq., supra.* Its claim for judgment for the amount paid by way of double taxes for the years 1936 and 1937 falls within the bar of that statute (§ 11315-6, *supra*). Under the law, the trial court properly ruled that appellant *could not* recover judgment on account of the payments referred to.

Judgment affirmed.

MAIN, MILLARD, JEFFERS, SIMPSON, and DRIVER, JJ., concur.

BLAKE, J. (dissenting)—In *State ex rel. Seattle v. Carson,* 6 Wash. 250, 33 Pac. 428, speaking of the restriction of legislative power contained in Art. XI, § 12, of the constitution, the court said:

"The right which is denied to the legislature is the power *to impose taxes* upon municipal corporations for corporate purposes. . . . So long, therefore, as the tax is imposed by the corporate authorities, the evil sought to be avoided by the constitutional provisions is not incurred . . . *the expression 'to assess' does not mean the making of an assessment in the sense of a valuation."* (Italics mine.)

Presumably, that statement is still the law, because it was quoted with approval in *Opportunity Township v. Kingsland,* 194 Wash. 229, 77 P. (2d) 793, our most recent case dealing with Art. XI, § 12.

Obviously, the holdings in the *Redd* and *Northwestern Improvement Company* cases are not in harmony with that interpretation of the constitutional restriction on legislative power. Either that interpretation should be disavowed or the *Redd* and *Northwestern Improvement Company* cases should be overruled.

Believing that the interpretation of the constitutional provision laid down in the *Carson* case and approved in the *Kingsland* case is sound, I dissent.

STEINERT, J. (dissenting)—I disagree with the majority upon two phases of the case:

I. I am of the opinion that appellant's steam heating plant and its operation are so intimately and vitally connected with its electric system that, for assessment purposes, the two utilities are to be regarded as a single unit. The properties of the two systems are under one ownership; they are jointly mortgaged to secure about sixty million dollars of outstanding bonds; a portion of the steam is produced with electricity from appellant's intercounty electric system; the managerial,

executive, and accounting personnel perform the necessary services for both systems indiscriminately. In other words, the ownership, the activities, the sources of income, and the expense of operation of the two systems are unified. The mere fact that the steam heating plant itself is located wholly within King county and supplies steam to the business section of the city of Seattle only, is of minor importance when it is considered that appellant is engaged generally in the sole business of producing and distributing heat, light, and power in whatever form, over an area much larger than King county alone.

In valuing each county's proportion of an inter-county public service company's operating property, it is necessary to fix the value of the entire system. *Northern Pac. R. Co. v. State,* 84 Wash. 510, 147 Pac. 45, Ann. Cas. 1916E, 1166. One of the favorite and most reliable criteria for determining the value of public service companies is known as the stock and bond method. That method is accurately described by Judge J. Stanley Webster in the case of *Northern Pac. R. Co. v. Adams County,* 1 F. Supp. 163, 172, as follows:

"The authorities recognize as a relevant and highly important factor the value of the corporation's outstanding stock and bonds—the so-called 'stock and bond' method. Under this plan, the average market quotations of the stock and bonds over a more or less arbitrarily fixed period of time is found, and this figure is multiplied by the total number of outstanding units of each class of securities. The result is supposed to reflect the value of all the stock and bonds outstanding, and consequently to evidence the value of all the corporation's property or assets. From this amount is deducted the value of the nonoperating property of the corporation, and the residue is taken as the value of its operating property—the property to be assessed. There is no dispute amongst counsel

that this is a proper element to be taken into account, but, if there were dispute, the authorities amply sustain it, and I shall leave it there."

In *State Railroad Tax Cases,* 92 U. S. 575, 605, 23 L. Ed. 663, appears the following statement:

"It is therefore obvious, that, when you have ascertained the current cash value of the whole funded debt, and the current cash value of the entire number of shares, you have, by the action of those who above all others can best estimate it, ascertained the true value of the road, all its property, its capital stock, and its franchises; for these are all represented by the value of its bonded debt and of the shares of its capital stock."

Since the value of the entire assets of a public service company functioning in several counties must be considered in order to determine the value of its operating property, the state tax commission is, in the very nature of things, the proper authority to determine the comprehensive value. Any other method would be found, as it has many times been found, to be productive of inaccuracies, inequalities, and general confusion.

Recognizing the advantages of a systematized plan for assessment and the disadvantages flowing from multiplied local assessments, the legislature in 1935 adopted a uniform method for the assessment and taxation of properties of transportation and utility companies, including electric light and power, and heating companies. Section 2 of chapter 123, Laws of 1935, p. 361, provides:

"In all matters relating to assessment and taxation the commission shall have jurisdiction to determine what is operating property and what is non-operating property."

Section 7, p. 363, of the act provides for assessment, by the *tax commission,* of the operating property of

such companies. Section 15, p. 368, of the act provides that the actual cash value of the operating property of such companies shall be apportioned by the commission to the respective counties and taxing districts wherein such property is located. Section 16, p. 370, provides that, when the state board of equalization shall have determined the equalized assessed value of the operating property of such companies, the commission shall certify such equalized assessed value to the county assessor of the respective counties, whereupon such value shall constitute the assessed valuation of the operating property in such county, upon which the taxes shall be levied and collected.

In *Smith v. Northern Pac. R. Co.*, 7 Wn. (2d) 652, 110 P. (2d) 851, we said:

"Under the authority vested in the tax commission by § 2 of the 1935 act (Rem. Rev. Stat. (Sup.) § 11156-2), that body has jurisdiction to determine what is operating property and what is non-operating property. In the absence of fraud, or of arbitrary and capricious action, its determination of such questions is controlling."

In view of the intercounty activity of appellant, I am of the opinion that the state tax commission is the proper authority to classify appellant's properties and to assess its operating property, and that the *Redd* case and the *Northwestern Improvement Company* case, relied upon in the majority opinion, have no application here.

II. I am of the further opinion that appellant should have been allowed to recover on account of double taxes paid for the years 1936 and 1937. Although a literal interpretation of Rem. Rev. Stat., § 11315-6 (Laws of 1931, chapter 62, p. 204, § 6), quoted in the majority opinion, would bar this action in so far as it relates to those years, I am of the opinion that the

statute did not contemplate, and therefore does not affect, the situation presented by this case.

It is apparent, I think, from the language of Rem. Rev. Stat., § 11315-2 (Laws of 1931, chapter 62, p. 201, § 2), that the statute contemplated the usual situation where a person, deeming a tax levied against his property to be unlawful or excessive, might, nevertheless, pay the tax under protest and *thereupon* sue for the recovery thereof. In such instances, the taxpayer knows, or is presumed to know, that the tax has been levied. In the case at bar, however, appellant neither knew, nor should be presumed to know, of the levy by the county assessor for the 1936 and 1937 taxes, because in the same year the identical property had been assessed by the state tax commission, and the taxes which were levied pursuant thereto had in good faith been paid. Appellant did not learn of the county assessor's former levy until 1940, at which time the literal wording of Rem. Rev. Stat., § 11315-6, would bar it from any relief whatever.

To hold that appellant was required to institute its action within the time specified by the statute would, under the circumstances of this case, have compelled it, and likewise would have enabled it, to bring the action before it had actually paid the tax, even though it had no knowledge that the tax had been levied. Certainly the legislature did not contemplate that situation, for the statute is to the contrary. Any action brought before payment of the tax would be premature. There is no contention here that there was any delay in bringing the action after the tax was actually paid.

If the language of the statute, taken literally, is nevertheless sufficient to cover the present case, then I think that it should be held to be unreasonable, unjust, and equivalent to taking property without due

process of law, because the taxpayer is thereby deprived of the right to a hearing in court.

For these reasons I dissent.

ROBINSON, C. J., concurs with STEINERT, J.